**Manuel NEVAREZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–91–00083–CR.**

Court of Appeals of Texas,
El Paso.

Jan. 27, 1993.

Rehearing Overruled March 17, 1993.

Joseph A. Calamia, El Paso, for appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for appellee.

Before OSBORN, C.J., and BARAJAS and LARSEN, JJ.

## OPINION

BARAJAS, Justice.

This is an appeal from a conviction for the offense of murder. After a jury's verdict finding Appellant guilty, the trial court assessed punishment at 50 years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. In twenty-four points of error, Appellant attacks the judgment of conviction. We affirm the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

The record reveals that on February 19, 1990, Scott Matthew Sanner, a plant protection and quarantine officer for the United States Department of Agriculture, was stationed at the primary inspection booth located at the United States Port of Entry at Ysleta, Texas. At approximately 4:45 p.m., Officer Sanner spoke with the victim in the instant case, Customs Inspector Timothy McCaghren, who had just placed the license plate number of an approaching vehicle, a van, into a computer. Appellant was the driver and sole occupant of the van.[1] Officer Sanner testified that as he approached the window on the passenger side of Appellant's van, he thought he smelled an odor of marijuana coming from the outside of the van. He stated that he placed his head inside the van but he did not detect the same odor. Sanner asked for some identification; however, Appellant indicated that he did not have a wallet. Officer Sanner than asked Appellant to open the rear door of his van. Inspector McCaghren was standing approximately six feet to Officer Sanner's right, observing the conversation. Officer Sanner stated that Appellant's van began rolling slowly and suddenly took off

very fast with the engine accelerating. Both the victim and Officer Sanner yelled at Appellant. The record established that the victim latched onto the passenger door of Appellant's van as it sped away from the inspection area. The victim was seen keeping his knees up in order that his legs would not be dragging on the ground.

Officer Sanner further testified that there was no obstruction between Appellant and the passenger door window. While the victim was holding on to the side of Appellant's van, his head was seen above the bottom portion of the window. Appellant's van kept speeding away, exhibiting no attempt to stop, although it did not appear to veer to the left or the right.

The record further shows that at the time of the incident, Robert Jones, a customs inspector with the United States Customs Service, heard the squealing of tires and shouting that sounded like, "Stop, stop, hold it." He also saw a van pulling away from one of the lanes and then observed the victim running alongside the van. Inspector Jones testified that he saw the victim grab the passenger side rearview mirror and lifted himself up to the window while swinging his feet above the ground. Inspector Jones likewise stated that the victim's head was above the bottom sill of the passenger side window.

Jose Ledesma, the supervising inspector with the United States Customs Service at the time of the incident, testified that he saw Officer Sanner talking to an individual driving a brown van. He stated that the driver of the van "gunned" or accelerated the vehicle and that the victim jumped on the door and hooked his hands on the edge of the passenger door. Inspector Ledesma further stated that the van proceeded "like 90 miles an hour" with the victim managing to get both his feet up on the door of the van. Finally, Inspector Ledesma testified that as the van drove away, he saw Appellant with a grimace on his face, looking at the victim.

---

1. The evidence established that on January 26, 1990, Appellant purchased a brown 1976 Dodge

van at a cash price of $1,100.

The State, in its case-in-chief, additionally called Douglas B. Dickens, an inspector with the United States Customs Service. Inspector Dickens stated that he heard yelling and saw a brown Dodge van rapidly accelerate away from the inspection area. He further testified that he saw the victim, Inspector McCaghren, clinging to the passenger door and saw him pull himself up to the door as the vehicle sped away. He stated that he witnessed the vehicle turn a corner and he saw the victim's feet fly in the air. He further saw the vehicle accelerate down a street, and noticed that Inspector McCaghren was no longer clinging to the side of the van. Inspector Dickens testified that he got into his personal vehicle and went to find the victim. He found him laying on the edge of the roadway, approximately 300 yards from the Port of Entry. Inspector Dickens stated that the victim was laying on his back, bleeding from his nose, ears and mouth. The victim's clothing was torn and he had lacerations on his legs. Inspector Dickens further testified that he noticed a dark, circular laceration over the victim's eyebrow which was slightly bleeding. Inspector Dickens stated that he did not characterize the wound above the victim's eyebrow as a pavement burn, but rather, appeared typical of an assault-type wound.

Inspection of Appellant's vehicle revealed the existence of a pipe which was located between the seats of the van, within reach of the driver's seat.

The record further demonstrates that Dr. Juan Contin, the El Paso County Medical Examiner, testified that the victim died as a result of a blow to the back of the head. Contin stated that while the victim had also suffered abrasions on his eyebrow and on the back of his hands, it was possible that these abrasions were caused by a blunt instrument such as the pipe found in Appellant's van, although he could not with any certainty state that such was the case.

Jesus Guadalupe Acosta, testifying pursuant to a grant of federal, as well as state, immunity, testified that he had assisted Appellant in the loading of a quantity of marijuana under Appellant's van in Mexico. The marijuana, secured by wires, consisted of six or seven packages weighing between sixty-two and sixty-four pounds.[2] Acosta stated that he came into the United States and met with Appellant at which time Appellant is said to have stated, "I'm not worth a shit, I took an agent." Acosta testified that he asked Appellant what had happened, to which Appellant responded that he had taken his fingers off the door. Acosta additionally stated that Appellant wanted to know where an individual by the name of Alejandro Parga lived in order that the marijuana could be delivered. Appellant was directed to Parga's house where the marijuana was unloaded.

The record indicated that Appellant was arrested on February 24, 1990 by Juan Briones, a special agent for the United States Immigration Service. Agent Briones testified, on cross-examination, that Appellant, after being warned of his rights, voluntarily made an oral statement while en route to the police station. In his oral statement, Appellant related to Agent Briones that as the victim was hanging on to his van, he hit the victim's hands. Agent Briones testified that he did not make further inquiry with respect as to how Appellant hit the victim's hands. Agent Briones testified that Appellant further stated that at the time of the incident, he was taking three "hits" of heroin a day and that he was ill from a lack of heroin.

Several witnesses were presented by Appellant in his defense. Alejandro Parga, the alleged recipient of the marijuana, testified that he did not know Appellant or Guadalupe Acosta and further that he was not involved in any agreement to import marijuana into the United States on the day of the incident.

---

**2.** Photographs of the undercarriage of Appellant's van revealed the existence of wires hanging from its undercarriage. A witness for the State testified that Appellant's van was inspected prior to its sale to Appellant and that no wires were detected hanging down from the undercarriage of the van.

Appellant, testifying in his own defense, stated that he was suffering from heroin withdrawal while in line waiting to cross the international bridge into the United States. He stated that when he came to the inspection point, he spoke with the inspector and understood him to say that he could go ahead and he did so. He stated that he accelerated quickly looking straight ahead and that after he left the inspection area, he looked in the rearview mirror and noticed someone holding onto the outside of the van. Appellant stated that he did not see the victim approach his van, seeing the victim for the first time when he looked in the rearview mirror. Appellant testified that he then saw an individual flying in the air. Appellant further stated that due to the fact that he had been beaten by customs officers on two prior occasions, he felt that if he stopped, he would be killed. Appellant related that he did not intend to cause the death of the victim.[3]

In rebuttal, the State called Alfonso Marquez, a detective with the El Paso Police Department, who testified that he had occasion to obtain a confession from Appellant. Detective Marquez stated that Appellant, in his confession, admitted that he had about sixty pounds of marijuana under his van. Appellant additionally stated that the victim had a gun in his hand and was about to shoot him.

## II. DISCUSSION

In Points of Error Nos. One through Four, Appellant asserts that the court erred in failing to grant his motions to quash the indictment in that the indictment failed to specifically allege an act which is clearly dangerous to human life. Appellant was initially charged with a four-count murder indictment alleging alternate theories with regard to the commission of the instant offense.[4] Only counts one and three were submitted to the jury. Count one of the indictment provided in pertinent part as follows:

[D]id then and there unlawfully, intentionally and knowingly cause the death of an individual, TIMOTHY McCAGHREN, by operating a motor vehicle with knowledge that the said TIMOTHY McCAGHREN was clinging to the passenger side door of the said vehicle,

Count three provided in pertinent part as follows:

[D]id then and there unlawfully, intentionally and knowingly commit a felony, other than voluntary or involuntary manslaughter, to-wit: Possession of Marihuana over four ounces and in the course of and in furtherance of the commission of the said offense, the said MANUEL NEVAREZ committed an act clearly dangerous to human life, to-wit: operate a motor vehicle with knowledge that the said TIMOTHY McCAGHREN was clinging to the passenger side door of the said motor vehicle, thereby causing the death of the said TIMOTHY McCAGHREN,

Citing *Lugo–Lugo v. State,* 650 S.W.2d 72 (Tex.Crim.App.1983), Appellant asserts that under both Section 19.02(a)(1) as well as Section 19.02(a)(3), the State must allege specific acts on the part of the accused that are objectively and clearly dangerous to human life.[5] The Court of Criminal Appeals, in *Lugo–Lugo,* expressly stated that it was not necessary to demonstrate an act clearly dangerous to human life with regard to Section 19.02(a)(1). *Lugo–Lugo,* 650 S.W.2d at 80, 81. However, with re-

---

**3.** Appellant additionally stated that he was not in possession of marijuana at the time the victim was killed.

**4.** Tex.Penal Code Ann. § 19.02(a) (Vernon 1989) provides in part:
 (a) A person commits an offense if he:
 (1) intentionally or knowingly causes the death of an individual;
 (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or

 (3) commits or attempts to commit a felony, other than voluntary or involuntary manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

**5.** The Appellant moved to quash the indictment on this ground prior to trial and the court denied the request.

spect to Section 19.02(a)(2), the Court held that Section 19.02(a)(2) required a showing that the specific act complained of, which resulted in death, be objectively dangerous to human life.[6] We note that in so holding, the Court did not overrule *Bowen v. State*, 640 S.W.2d 929, 931 (Tex.Crim.App.1982) wherein it was held that the allegation with regard to the clearly dangerous act, "by beating him ... with his hand and fist" while not necessarily dangerous to human life, did not render the indictment fundamentally defective. In *Depauw v. State*, 658 S.W.2d 628, 633 (Tex.App.—Amarillo 1983, pet. ref'd), the clearly dangerous act alleged was that the defendant struck the head of the deceased with a blunt instrument. The Court of Appeals held:

> As long as the act alleged by the State is within the range of acts which a jury could reasonably conclude were clearly dangerous to human life, the State will have sufficiently alleged this essential element of § 19.02(a)(2). See *Bowen v. State*, 640 S.W.2d 929 (Tex.Cr.App.1982). The act of striking another's head with a blunt instrument is the type of act which a jury could arguably conclude was clearly dangerous to human life. To require the State to allege the act with greater specificity would only be to require the State to plead its evidence in the indictment.

■ We have carefully reviewed the record in the instant case and find that the allegation that Appellant operated a motor vehicle with knowledge that the victim was clinging to the passenger side door of the vehicle is an act which a jury could reasonably and objectively conclude was clearly dangerous to human life. Accordingly, Points of Error Nos. One through Four are overruled.

In Points of Error Nos. Five through Seven, Appellant contends that the trial court erred in denying his motions for an instructed verdict of not guilty. Specifically, Appellant maintains that the State failed to prove beyond a reasonable doubt

each and every essential element of the offenses charged in the indictment in counts one and three.

■ A challenge to the trial court's ruling on a motion for an instructed verdict is in actuality a challenge to the sufficiency of the evidence to support the judgment of conviction. *Madden v. State*, 799 S.W.2d 683 (Tex.Crim.App.1990) (disavowing waiver language found in *Hafdahl v. State*, 805 S.W.2d 396 (Tex.Crim.App.1990)).

■ In reviewing the sufficiency of the evidence to support a criminal conviction, we are constrained to view all the evidence in a light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime as alleged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Crim.App.1991); *Dwyer v. State*, 836 S.W.2d 700 (Tex.App.—El Paso 1992, no pet.); *Enriquez v. State*, 826 S.W.2d 191 (Tex.App.—El Paso 1992, no pet.). Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. *Stoker v. State*, 788 S.W.2d 1, 6 (Tex.Crim.App.1989), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). Nor do we resolve any conflict of fact or assign credibility to the witnesses as it was the function of the trier of fact to accept or reject any, part or all of any witness's testimony. See *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991). Instead, an appellate court's duty is only to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in a light most favorable to the verdict. *Adelman*, 828 S.W.2d at 421–22. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson*, 819 S.W.2d at 843, quoting *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

---

**6.** While not expressly stated in *Lugo–Lugo*, we will assume that the same requirements apply to Section 19.02(a)(3).

In the instant case, the application paragraph of the charge instructed the jury to find Appellant guilty only if they believed beyond a reasonable doubt that:

MANUEL NEVAREZ, did intentionally or knowingly cause the death of TIMOTHY McCAGHREN by operating a motor vehicle with knowledge that the said TIMOTHY McCAGHREN was clinging to the passenger side door of the said motor vehicle, as alleged in the indictment,

or

MANUEL NEVAREZ, did intentionally or knowingly commit a felony, other than voluntary or involuntary manslaughter, to-wit: Possession of Marijuana over four ounces and in the course of and in furtherance of the commission of the said offense, the said MANUEL NEVAREZ committed an act clearly dangerous to human life, to-wit: operated a motor vehicle with knowledge that the said TIMOTHY McCAGHREN was clinging to the passenger side door of the said motor vehicle, thereby causing the death of the said TIMOTHY McCAGHREN, then you will find the defendant guilty of murder.

■ The jury returned a general verdict of guilty. Alternate pleading of the differing methods of committing one offense may be charged in one indictment. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim.App.1991). When a general verdict is returned and the evidence is sufficient to support a guilt-finding under any of the paragraph allegations submitted, the verdict will be upheld. *Fuller v. State*, 827 S.W.2d 919, 931 (Tex.Crim.App.1992); *Kitchens*, 823 S.W.2d at 258; *Aguirre v. State*, 732 S.W.2d 320, 326 (Tex.Crim.App. 1982) (opinion on rehearing).

■ As noted in the factual summary set forth above, an agent with the United States Department of Agriculture detected an odor of marijuana emanating from the outside of Appellant's van. During further inspection, Appellant suddenly and unexpectedly accelerated at a very high rate of speed, with the victim latched onto the passenger door of the van as it sped away. Several witnesses, testifying in an identical fashion, each related that the victim's head was above the bottom portion of the front passenger window. Inspector Dickens of the United States Customs Service testified that he saw the victim's feet fly in the air as Appellant's van turned a corner, then noticed that the victim was no longer clinging to the side of Appellant's vehicle. The record shows that the victim was found lying on the road, on his back, bleeding from his nose, ears and mouth. The record further shows that the victim suffered a circular laceration over his eyebrow, which according to the examining pathologist, could have been caused by a blunt instrument such as a pipe. The record further establishes that a pipe was recovered from Appellant's van pursuant to a search of the vehicle.

We have carefully reviewed the record in the instant case, examining all the evidence in a light most favorable to the verdict, and find that the jury, as rational finders of fact, could find each and every essential element of the offense of felony murder as alleged in count two, beyond a reasonable doubt. Consequently, Points of Error Nos. Five through Seven are overruled.

In Points of Error Nos. Eight, Ten, Eleven, Twelve and Thirteen, Appellant asserts that the trial court erred in denying his motion to elect under which count of the indictment the State intended to submit the case to the jury. Appellant further contends that the failure of the trial court to submit the two murder allegations in the alternative and to submit separate jury verdicts constituted a violation of due process. As discussed above, alternate pleading of the differing methods of committing one offense may be charged in one indictment. *Kitchens*, 823 S.W.2d at 258. When a general verdict is returned and the evidence is sufficient to support a guilt-finding under any of the paragraph allegations submitted, the verdict will be upheld. *Fuller*, 827 S.W.2d at 258, *Aguirre*, 732 S.W.2d at 320, 326.

■ Appellant asserts that the submission of the case to the jury in this manner

would allow a verdict that was not unanimous, in violation of his due process rights. However, the United States Supreme Court has determined that "there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *Kitchens*, 823 S.W.2d at 258 quoting *Schad v. Arizona*, 501 U.S. ——, ——, 111 S.Ct. 2491, 2497, 115 L.Ed.2d 555, 565 (1991) (plurality opinion). Accordingly, Points of Error Nos. Eight, Ten, Eleven, Twelve and Thirteen are overruled.

In Point of Error No. Nine, Appellant contends the court erred in overruling his motion for instructed verdict in that the evidence was insufficient to prove beyond a reasonable doubt that Appellant's vehicle was used and exhibited as a deadly weapon during the commission of the offense. The following special issue was submitted to the jury:

> Do you find beyond a reasonable doubt that **MANUEL NEVAREZ** used or exhibited a deadly weapon to-wit: a motor vehicle, during the commission of the felony offense.
>
> **"Deadly weapon"** means anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury, or anything that, in the manner of its use or intended use, is capable of causing death or serious bodily injury.

The jury answered affirmatively.

■ The definition of "deadly weapon" in the special issue is found in Tex.Penal Code Ann. § 1.07(a)(11)(A) and (B) (Vernon 1974). While an automobile is not a deadly weapon per se, it was incumbent upon the State to show beyond a reasonable doubt that Appellant's "manner of use" of the vehicle was "capable of causing death or serious bodily injury." *Morgan v. State*, 775 S.W.2d 403, 406 (Tex.App.—Houston [14th Dist.] 1989, no pet.).

Appellant states in his brief:

> The State [sic] case showed that the appellant drove his motor vehicle through the international inspection point at a high rate of speed, after having been temporarily detained for inspection, in order to avoid inspection because he was importing marijuana and the deceased persisted in staying iwth [sic] the vehicle by attaching himself to the passenger side door and that he fell off as the vehicle sped away.

■ On the other hand, the State also presented evidence that Appellant accelerated rapidly, knowing the victim was hanging onto the side of the van, and persisted in driving away thereby causing Appellant's hands to lose their grip on the window. In light of the above, we find that there is sufficient evidence to support the jury's affirmative finding to the special issue. See, *Morgan*, 775 S.W.2d at 405–407, *Roberts v. State*, 766 S.W.2d 578 (Tex. App.—Austin 1989, no pet.). Point of Error No. Nine is overruled.

In Points of Error Nos. Fourteen and Fifteen, the Appellant asserts that the court erred in charging the jury by combining the definition of intent with the definition of knowledge, as well as charging in the disjunctive. Appellant additionally asserts error in the application part of the indictment as to both counts when the indictment charged knowingly and intentionally in the conjunctive thereby reducing the burden of proof for the State to conform to the allegations of the indictment. The court gave the following definitions pursuant to Tex.Penal Code Ann. § 6.03(a) and (b) (Vernon 1974) in the charge to the jury:

> A person acts **intentionally,** or with **intent,** with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
>
> A person acts **knowingly,** or with **knowledge,** with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct, when he is aware that his conduct is reasonably certain to cause the result.

As noted in the prior discussion on the sufficiency of the evidence the application paragraph with regard to the first count required the jury to find that the Appellant, "did intentionally or knowingly cause the death of TIMOTHY McCAGHREN...." [7]

The Appellant argues that as murder is a result-oriented offense, it was error for the trial court to give the entire definition of knowingly and intentionally, including those portions referring to the conduct's result.

■ When an accused fails to make an objection to the charge at trial, on appeal, he must claim that the error was fundamental, and he will only obtain a reversal if the error was so egregiously harmful that the defendant did not receive a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984).[8] This Court must assess the actual degree of harm in light of the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the entire record. *Arline v. State*, 721 S.W.2d 348, 351–352 (Tex.Crim.App.1986).

■ The definitions in the charge must be examined in the context in which the defined term appears without limiting it to portions of the charge standing alone. *Turner v. State*, 805 S.W.2d 423, 430 (Tex.

Crim.App.1991). In the present case, the charge limited the definitions of "knowingly" and "intentionally" by applying them to the factual context. The charge required the jury to find that the Appellant "intentionally or knowingly caused the death" of the victim. *See Id.* at 431. Given this limitation, we find that the charge was properly restricted. *See Peterson v. State*, 836 S.W.2d 760, 765–766 (Tex.App.—El Paso 1992, pet. ref'd). Points of Error Nos. Fourteen and Fifteen are overruled.

In Points of Error Nos. Sixteen and Seventeen, Appellant argues that the trial court erred in refusing to grant his requested instruction with regard to causation and concurrent cause as contained in Tex.Penal Code Ann. § 6.04(a) (Vernon 1974).[9]

■ As a general rule, an accused is entitled to an affirmative defensive instruction on every issue raised by the evidence, regardless of whether such evidence is strong, feeble, unimpeached or contradicted, and even if the trial court has the belief that the testimony is not entitled to belief. *Sanders v. State*, 707 S.W.2d 78, 80 (Tex. Crim.App.1986). On the other hand, if the evidence introduced in support of the alleged defensive theory merely negates an element of the offense and the charge given adequately protects the defendant's

---

7. We note that the felony murder count, pursuant to the indictment, required the jury to find that the Appellant intentionally or knowingly committed a felony—possession of marijuana over four ounces. In these cases, the culpable mental state for the act of murder is supplied by the mental state accompanying the underlying felony giving rise to the act. *Murphy v. State*, 665 S.W.2d 116, 120 (Tex.Crim.App.1983). "Possession" is not an act, or omission, but is defined as something distinct from both act and omission. *Knab v. State*, 626 S.W.2d 60, 61 (Tex.Crim.App.1982). "Possession" means, "actual care, custody, control, or management." Health & Safety Code Ann. § 481.002(38) (Vernon 1992). Logically, this is a "result of conduct" type of offense. As such, the court did not err in instructing the jury with regard to the full definitions of "intentionally" and "knowingly". *See Hernandez v. State*, 819 S.W.2d 806, 811–812 (Tex.Crim.App.1991).

8. The Appellant made the following objection to the charge:

 I wish to object to the Court's charge in which the charges are in the disjunctive, intentionally or knowingly, because it lessens the proof required by the indictment, it charges intentionally or knowingly, two states of mind, intentionally or knowingly, and it reduces the burden of proof for the State to conform to the allegations of the indictment.
 We fail to perceive how this objection apprised the trial court of the matters complained of on appeal.

9. Section 6.04(a) provides:

 A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

rights, no affirmative charge must be given. *Id.* at 81.

■ In *Goodin v. State*, 750 S.W.2d 857 (Tex.App.—Corpus Christi 1988, pet. ref'd), the defendant was involved in the repossession of the complainant's vehicle. In the process of repossessing the vehicle, the complainant jumped on the hood of his vehicle only to be driven around by the defendant for some distance with him clinging to the hood. The defendant, in *Goodin*, asserted that the complainant's conduct in jumping on the hood of his vehicle amounted to a sufficient concurrent cause to warrant an instruction. The Court of Appeals held that the mere act of jumping on the hood of the car clearly was not sufficient to produce the complainant's injuries and thus, no concurrent cause instruction was required. · *Id.* at 861.

We are faced with strikingly similar facts in the present case and we find that the trial court did not err in refusing the requested instruction. Accordingly, Points of Error Nos. Sixteen and Seventeen are overruled.

■ In Points of Error Nos. Eighteen and Nineteen, Appellant maintains the court erred in failing to instruct the jury on the issue of whether an intervening cause other than Appellant's conduct was the actual cause of death of the deceased under both counts. Specifically, Appellant complains of the trial court's denial of his requested instruction on "intervening cause." In Appellant's brief, he more correctly refers to his request as one requesting an instruction on "alternate cause" and cites *Barnette v. State*, 709 S.W.2d 650 (Tex. Crim.App.1986) in support of his contention. However, in *Barnette*, the Court stated that alternate cause is simply a different version of the facts which negates at least one element of the State's case. The denial of an accused's requested instruction is not error where the requested instruction is merely an affirmative submission of a defensive issue which merely denies the existence of an essential element of the State's case. *Id.* at 652. As a result, we find that the trial court did not err in denying Appellant's requested instruction.

Points of Error Nos. Eighteen and Nineteen are overruled.

In Point of Error No. Twenty, Appellant asserts that the trial court erred in failing to instruct the jury unequivocally that the testimony of Detective Marquez concerning any statement made by Appellant was inadmissible as a matter of law, contending as the statement was not knowingly and voluntarily made. As noted in the factual summary above, Detective Alfonso Marquez of the El Paso Police Department obtained a statement from Appellant. Detective Marquez stated that prior to obtaining the statement, he advised Appellant of his *Miranda* rights from a *Miranda* warning card obtained from the District Attorney's Office. This included the statement that, "any statement that he gave could and would be used against him at his trial or trials." On cross-examination, the following exchange occurred:

DEFENSE: And you never gave him any advice as to what would happen if he did not give you a statement of what you wanted?

WITNESS: No, I did not.

DEFENSE: Did you tell him that statement that he made would be used for or against him?

WITNESS: Yes, I did.

DEFENSE: You're sure about that?

WITNESS: That's in the Miranda warning card.

DEFENSE: There's no question about my question and the answer that you gave me?

WITNESS: If I read it off the warning card, the Miranda warning, that's what I gave him.

DEFENSE: The question that I made to you, you have no—

WITNESS: If you will repeat the question, I will answer it again.

DEFENSE: You gave him the Miranda warnings and you told him that any evidence that he gave could be used for or against him?

WITNESS: Correct.

Later, during redirect examination, Detective Marquez retracted his statement

that he had said the evidence could be used "for or against him" and further on redirect examination, stated he had confined the given warnings to the *Miranda* card which stated in pertinent part:

You have the right to remain silent and not make any statement at all and that any statement you make may and probably will be used in evidence against you at your trials, and any statement you make may be used in evidence against you in court.

Appellant requested and obtained an instruction on the voluntariness of his confession which appears as follows:

You are not to consider any of the statements given by the defendant to Detective Marquez for any purpose whatsoever unless you first find beyond a reasonable doubt that such statements were voluntarily given by the defendant.

If you find or if you have a reasonable doubt that Detective Marquez told the defendant that his statements could be used "for or against" him, then as a matter of law such statements were involuntary and shall not be considered by you for any purpose.

If you do so find beyond a reasonable doubt that such statements were voluntarily given, then you are only to consider such statements for the purpose of impeachment, that is, to determine the credibility of the defendant and not as evidence of the offenses charged against him under both counts of the indictment, submitted to you.

■ If the evidence is uncontroverted and uncontradicted that the individual taking or obtaining a confession tells an accused that his confession might be used "for or against him," or "for and against him," the confession is rendered inadmissible evidence at trial because the warning does not comply with Tex.Code Crim.Pro. Ann. art. 38.22 (Vernon 1979). *Dunn v. State*, 721 S.W.2d 325, 341 (Tex.Crim.App. 1986). However, when an issue of fact is raised, as in this case, regarding the validity of a confession, it is then for the jury to resolve that controverted issue. *Dunn*, 721 S.W.2d at 339. In the present case, the proper procedure was utilized and the jury was properly instructed. We overrule Point of Error No. Twenty.

■ In Points of Error Nos. Twenty-one through Twenty-three, Appellant argues the court erred in admitting into evidence a metal pipe in that the use of the metal pipe was not alleged in the indictment, the evidence linking Appellant with the pipe was highly speculative as well as inflammatory, all of which constituted a violation of Appellant's due process rights. Appellant cites *Bell v. State*, 149 Tex.Crim. 509, 196 S.W.2d 923 (1946) in support of his contentions. We find that Appellant's reliance on *Bell* is misplaced in that *Bell* involved the total insufficiency of evidence to establish that a murder victim's death was caused by the striking with fists, as alleged in the indictment. In the instance case, Appellant provides absolutely no other authority in support of his contentions and, as such, we find such contentions to be wholly without merit. Accordingly, Points of Error Nos. Twenty-one through Twenty-three are overruled.

■ In Point of Error No. Twenty-four, Appellant maintains that the court erred in denying and overruling his motions to suppress the admission of the metal pipe. On review, Appellant states that the pipe was seized, without warrant, three to four days after the initial search warrant and warrant of arrest had expired. We have carefully reviewed the entire record in the instant case and find that Appellant has failed to include the warrant and affidavit as part of the record for our consideration. As a consequence, we are unable to rule upon his contentions. *Cannady v. State*, 582 S.W.2d 467, 469 (Tex.Crim.App.1979), *Townsend v. State*, 481 S.W.2d 855, 856 (Tex.Crim.App.1972). Point of Error No. Twenty-four is overruled.

The State urges in a cross-point of error that the court incorrectly ruled that the mere existence of language purporting to suspend the sentence offered to prove an enhancement paragraph precludes a finding of "true" to the enhancement allegation. Given the disposition of the cause, we are unable to address this contention.

*Armstrong v. State,* 805 S.W.2d 791, 794 (Tex.Crim.App.1991).

Having overruled each of Appellant's twenty-four points of error, the judgment of the trial court is affirmed.