Criminal Case Template
















COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



JUAN JOSE JASSO,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-01-00231-CR

Appeal from the

65th District Court 

of El Paso County, Texas

(TC# 970D04149)





MEMORANDUM OPINION

           This is an appeal from a conviction for engaging in organized criminal activity and
murder. A jury found Appellant guilty, and the trial court assessed punishment at forty (40)
years’ in the Institutional Division of the Texas Department of Criminal Justice on each
count. We affirm the judgment of the trial court. 
I. SUMMARY OF THE EVIDENCE
           On April 26, 1997, Myrna Saenz (“Saenz”) invited friends and family to a birthday
party for her sister Tanya at her mother’s house located at 9875 Lily Street in El Paso. 
Guests included Jessica Acosta, Tanya’s boyfriend, Rueben Martinez, and Myrna’s
boyfriend, Heriberto Hernandez. Martinez invited members of the Nasty Boys gang,
including Appellant, who stayed for approximately half an hour. After the Nasty Boys
departed, members of Soco Loco, including the victim, arrived. Saenz allowed Soco Loco
to stay since the Nasty Boys had left. However, members of the Nasty Boys later returned
to the party. Soco Loco and Nasty Boys were cordial for approximately one hour until
members of Soco Loco began “throwing their gang . . . on the other people’s faces.” Saenz
then asked both groups to leave. 
           Soco Loco was the first group to begin to leave the party. In an effort to avoid
problems, Saenz asked the Nasty Boys to stay until Soco Loco left. As Soco Loco departed
through the gate, someone from Nasty Boys pulled the gate and swung at a member of Soco
Loco. Fighting then ensued between the two groups. 
           Acosta, Hernandez and Saenz observed the fight involving the victim. Saenz saw
approximately four or five people surround, kick, hit, and throw bricks at the victim. Saenz
identified Appellant as one of the individuals surrounding the victim, but she did not see
what, specifically, Appellant did to the victim. Hernandez testified that he took a piece of
brick away from Appellant. Hernandez testified that he did not see Appellant throw a brick
at the victim. Hernandez had previously told the El Paso Police Department that he saw
Appellant throw a brick at and kick the victim. In light of his inconsistent statements,
Hernandez stated that it was difficult to testify against the Nasty Boys and that he worried
about his family’s welfare. Acosta testified that she observed Appellant throw a brick on the
victim’s head more than once. Acosta also heard one of the individuals surrounding the
victim say “Hit him, Jasso, hit him” in Spanish. 
           Crime scene technician Officer Michael C. Velez responded to the scene. Officer
Velez contained the scene and collected evidence. Officer Velez photographed graffiti
located across the street from 9875 Lily, additional graffiti found on the sidewalk, a blood
stain in the roadway, and blood-stained bricks. 
Gang Intelligence Officer Mary Lou Carrillo testified that Appellant was entered
in the department’s files as a member of the Nasty Boys gang, El Paso’s second largest gang. 
The Nasty Boys have a record of involvement in aggravated assaults, aggravated robberies,
drive-by shootings and drug trafficking. Officer Carrillo also explained that specific criteria
must be followed by law enforcement to identify an individual as a gang member.
           Dr. Juan Contin, El Paso’s chief medical examiner, performed the victim’s autopsy. 
Dr. Contin testified that the victim’s death was caused by brain edema that resulted from
blunt-force head injuries. Specifically, the victim sustained at least seven separate blows to
the head that resulted in a large subgaleal hematoma, two separate scalp lacerations, cerebral
contusions, diffuse subarachnoid hemmorrhage, masssive cerebral swelling, extensive skull
fractures, and multiple bruises and abrasions all over the body. Dr. Contin testified that a
combination of the blows caused the victim’s death. Dr. Contin described the injuries the
victim sustained to his left forehead and right shoulder as pattern injuries, whereby the skin
marks are configured like the object that caused the injury. Dr. Contin testified that the
landscaping brick submitted as evidence was capable of causing the victim’s injuries.  
           In a two-count indictment, Appellant was charged with engaging in organized
criminal activity with murder as the underlying offense


 (Count I) and murder (Count II). 
The jury found Appellant guilty of engaging and murder. The trial court sentenced Appellant
to forty (40) years in the Institutional Division of the Texas Department of Criminal Justice
on each count. 
II. DISCUSSION
           Appellant raises three issues. In the first issue, Appellant asserts two-pronged legal
insufficiency. Appellant asserts that the evidence was legally insufficient to prove that he
was a member of a combination under the engaging statute. Appellant also maintains that
since no parties charge was submitted to the jury, the evidence was legally insufficient to
establish that Appellant caused the victim’s death. In the second issue, Appellant contends
that gang-crime evidence was improperly admitted. In the third issue, Appellant maintains
that the convictions for engaging in organized criminal activity and murder violate the double
jeopardy provision of the United States Constitution. 
A. Legal Sufficiency
1. Standard of Review
           In conducting a legal sufficiency review, we determine whether, after viewing the
evidence in the light most favorable to the verdict, any rational trier of fact could have found
the challenged elements beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99
S.Ct. 2781, 61 L.Ed.2d 560 (1979); Nelson v. State, 848 S.W.2d 126, 131 (Tex. Crim. App.
1992), cert. denied, 510 U.S. 830, 114 S.Ct. 100, 126 L.Ed.2d 66 (1993). Our role is not to
ascertain whether the evidence establishes guilt beyond a reasonable doubt. Stoker v. State,
788 S.W.2d 1, 6 (Tex. Crim. App. 1989), cert. denied, 498 U.S. 951, 111 S.Ct. 371, 112
L.Ed.2d 333 (1990); Dwyer v. State, 836 S.W.2d 700, 702 (Tex. App.--El Paso 1992, pet.
ref’d). We do not resolve any conflict in fact, weigh any evidence, or evaluate the credibility
of any witnesses, and thus, the fact-finding results of a criminal jury are given great
deference. Menchaca v. State, 901 S.W.2d 640, 650-52 (Tex. App.--El Paso 1995, pet.
ref’d); Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson v. State, 819
S.W.2d 839, 843 (Tex. Crim. App. 1991); Leyva v. State, 840 S.W.2d 757, 759 (Tex. App.--El Paso 1992, pet. ref’d); Bennett v. State, 831 S.W.2d 20, 22 (Tex. App.--El Paso 1992, no
pet.). The jury is the sole judge of the weight of the evidence and may choose to believe all,
some, or none of it. Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). 
Reconciliation of conflicts in the evidence is within the exclusive province of the jury.
Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). 
 
2. Jury Instruction
           Appellant asserts that the evidence is legally insufficient since the jury charge did not
include an abstract instruction on the law of parties. The jury charge contained two counts. 
Count one read in relevant part as follows:
           ENGAGING IN ORGANIZED CRIMINAL ACTIVITY
           Paragraph A
. . . on or about the 27th day of April, 1997 . . . JUAN JOSE JASSO did then and
there with intent to establish, maintain or participate in a combination, with JAVIER
QUEZADA,JOSE BENAVIDEZ, FRANCISCO DOMINGUEZ, ELISEO
JARAMILLO, RICHARD BACA or CARLOS ESCOBAR, did then and there
commit the criminal offense of murder of JAKE 
           AGUIRRE.

           Paragraph B
. . . on or about the 27th day of April, 1997 . . . JUAN JOSE JASSO, as a member of
a criminal street gang, namely, The Nasty Boys, did then and there commit the 
           criminal offense of murder of JAKE AGUIRRE . . . 

Immaterial variance between the indictment and the jury charge may be disregarded in the
hypothetically correct charge


. See Gollihar v. State, 46 S.W.3d 243, 257 (Tex. Crim. App.
2001). Appellant notes that the hypothetically correct charge may not modify the indictment
allegations so as to allege an offense different than that alleged in the indictment. Planter
v. State, 9 S.W.3d 156 (Tex. Crim. App. 1999). The hypothetically correct charge in this
case does not modify the indictment so as to allege an offense different than that alleged in
the indictment, rather it simply disregards the “combination” surplusage from the criminal
street gang charge to provide alternative theories of the engaging offense. The State argued
that Appellant committed the engaging offense by killing the victim with the intent to
participate in a combination with other named individuals; oras a member of a criminal street
gang. After being charged pursuant to the several paragraphs alleged in the indictment, the
jury returned two general verdicts of guilty: one finding Appellant guilty of engaging and one
finding him guilty of murder. It is well-settled that when a general verdict is returned, the
verdict will be upheld so long as the evidence is sufficient to support a finding of guilt under
any of the paragraph allegations. McDuff v. State, 939 S.W.2d 607, 614 (Tex. Crim. App.
1997), cert. denied, 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997); Nevarez v. State,
847 S.W.2d 637, 643 (Tex. App.--El Paso 1993, pet. ref’d). Thus, the State need only have
sufficiently proved any one of the submitted paragraph allegations. Fuller v. State, 827
S.W.2d 919, 931 (Tex. Crim. App. 1992), cert. denied, 509 U.S. 922, 113 S.Ct. 3035, 125
L.Ed.2d 722 (1993). 
           In support of the State’s allegation that Appellant committed the engaging offense as
a member of a criminal street gang, the jury considered Officer Carrillo’s testimony that
Appellant is listed in department files as a member of the Nasty Boys gang, who have a
history of involvement in aggravated assaults, drive-by shootings, aggravated robberies, and
drug trafficking. Officer Carrillo also testified that Javier Quezada, Jose Benavidez,
Francisco Dominguez, Eliseo Jaramillo, Richard Baca, and Carlos Escobar, the other
individuals listed in the indictment as part of the combination, were also members of the
Nasty Boys. Heriberto Hernandez also testified that the fight was between two rival
gangs–the Nasty Boys and Soco Loco. Thus, we find there was sufficient evidence to find
that Appellant was a member of a criminal street gang under the engaging statute. 
3. Causation
           Appellant also claims that Dr. Contin’s testimony that a combination of the blows
caused the victim’s death is insufficient to prove that Appellant caused the victim’s death. 
The State need not point every fact directly and independently to Appellant’s guilt. 
Livingston v. State, 739 S.W.2d 311, 330 (Tex. Crim. App. 1987), cert. denied, 487 U.S.
1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). Criminal responsibility exists so long as the
result, in this case death, would not have occurred but for Appellant’s conduct “operating
either alone or concurrently with another cause, unless the concurrent cause


 was clearly
sufficient to produce the result and the conduct of the actor is clearly insufficient.” Tex..
Pen. Code Ann. § 6.04(a) (Vernon 2003); see also Robbins, 717 S.W.2d at 351.
           Count two charged that Appellant murdered the victim in one of four ways: by hitting
the victim (A) about the head and body with his fists, (B) about the head and body with his
feet, (C) about the head with a brick, or (D) about the head with a chair. Saenz testified that
she saw approximately four or five people surround, kick, hit, and throw bricks at the victim. 
Although Saenz did not observe what Appellant did to the victim, Acosta testified that she
saw Appellant throw bricks at the victim’s head more than once. Acosta also heard members
of the group surrounding the victim say, “Hit him Jasso, hit him.” Dr. Contin testified that
the victim sustained at least seven separate blows to the head, and that a combination of the
blows caused the victim’s death. Viewing the evidence in the light most favorable to the
verdict, we do not find that Appellant’s actions were clearly insufficient to cause the victim’s
death. Nor do we find that any concurrent cause was clearly sufficient to cause the victim’s
death. Thus, there was sufficient evidence for the jury to find Appellant caused the victim’s
death as a principal actor and not a party by hitting the victim about the head with a brick as
charged in Paragraph D of the second Count. Accordingly, this element of Appellant’s legal
sufficiency claim is overruled.
           Viewing the evidence in the light most favorable to the verdict, we conclude that a
rational trier of fact could have found sufficient evidence to support the verdict beyond a
reasonable doubt. Accordingly, Appellant’s Issue No. One is overruled in its entirety. 
B. Admission of Evidence 
           In Issue No. Two, Appellant asserts that the trial court erred in their admission of
evidence regarding the Nasty Boys’ criminal activity that was not directly linked to
Appellant. 
           Absent a clear abuse of discretion, the trial court’s determination on the admissibility
of evidence should not be reversed on appeal. See Levario v. State, 964 S.W.2d 290, 296
(Tex. App.--El Paso 1997, no pet.). So long as the trial court’s ruling on the admissibility
of the evidence was within the zone of reasonable disagreement, the ruling was not an abuse
of discretion. Id. 
           Evidence of gang affiliation is relevant to proving a gang-related crime such as
engaging. Vasquez v. State, 67 S.W.2d 229, 239 (Tex. Crim. App. 2002). To prove the
combination element of the offense under the engaging in organized criminal activity statute,
the State must prove more than that Appellant committed a single offense with two or more
persons; the State must prove a continuing course of criminal activity committed over a
period of time. See Nguyen v. State, 1 S.W.3d 694, 696-97 (Tex. Crim. App. 1999). To that
end, the State must prove that Appellant intended to establish, maintain or participate in a
group of three or more. Munoz v. State, 29 S.W.3d 205, 208 (Tex. App.--Amarillo 2000, no
pet.). The State must also prove that the members of the group intended to work together in
a continuing course of criminal activity. Id. Thus, testimony relating to Appellant’s
association with the Nasty Boys and their criminal history was relevant to the combination
allegation. Although the specific criminal acts by the gang were not directly linked to
Appellant, the State is required to prove the criminal acts and intent of the Appellant as well
as the gang. Ross v. State, 9 S.W.3d 878, 881-82 n.4 (Tex. App.--Austin 2000, pet. ref’d). 
Thus, the court did not err in admitting the gang evidence. Issue No. Two is overruled.
C. Double Jeopardy
           In Issue No. Three, Appellant asserts that his conviction for both engaging in
organized criminal activity and murder constitutes multiple punishments for the same
conduct in violation of the Fifth Amendment to the United States Constitution which states
in relevant part that no person “shall be subject for the same offense to be twice put in
jeopardy of life or limb.” The double jeopardy clause embodies three essential guarantees:
(1) protection against a successive prosecution for the “same offense” after acquittal; (2) it
protects against a successive prosecution for the “same offense” after conviction; and (3) it
protects against multiple punishments for the “same offense.” North Carolina v. Pearce, 395
U.S. 711, 89 S.Ct. 2072, 2077, 23 L.Ed.2d 656 (1969); Iglehart v. State, 837 S.W.2d 122,
126-27 (Tex. Crim. App. 1992). The third guarantee is at issue in this case.
           The double jeopardy guarantee against multiple punishments for the same offense
aims to prevent greater punishment than the legislature intended. Missouri v. Hunter, 459
U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983); Ex parte Kopecky, 821 S.W.2d
957, 959 (Tex. Crim. App. 1992). A person’s being charged with, acquitted, or convicted
of an offense, including murder, underlying the organized criminal activity statute is no
defense to prosecution under the organized criminal activity statute. Tex. Pen. Code Ann.
§ 71.03(3) (Vernon 2003). Based on the rationale of Missouri v. Hunter and the express
articulation of intent in Section 71.03, the Texas courts have concluded that the legislature
intended to authorize conviction and punishment in the same prosecution for both engaging
in organized criminal activity and the underlying offenses listed under Section 71.02. Reina
v. State, 940 S.W.2d 770, 775-776 (Tex. App.--Austin 1997, writ ref’d). For double jeopardy
purposes, organized criminal activity is a separate offense from any of the predicate offenses,
including murder, listed under the Penal Code’s prohibition on engaging in organized
criminal activity. Lam v. State, 17 S.W.3d 381, 385 (Tex. App.--Houston [1st Dist.] 2000,
pet. ref’d). Accordingly, we overrule Appellant’s Issue No. Three.
           Having overruled each of Appellant’s issues on review, we affirm the judgment of the
trial court.
August 5, 2003
                                                                                                                                                                                                                          RICHARD BARAJAS, Chief Justice


Before Panel No. 2
Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)