Melody SIMPSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–97–402–CR.

Court of Appeals of Texas, Waco.

Aug. 19, 1998.

---

Sheila R. Randolph, Fort Worth, for appellant.

Tim Curry, Criminal District Attorney, Chuck Mallin, Assistant Criminal District Attorney, Chief of Appellate Division, John A. Stride, Sandy Lawrence, Barbara Medley, Assistant Criminal District Attorneys, Fort Worth, for appellee:

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

A Tarrant County jury convicted Melody Simpson of aggravated assault with a deadly weapon and she was sentenced as an habitual offender to forty-five years in prison. *See* TEX. PEN.CODE ANN. § 22.02 (Vernon 1994). She appeals, presenting five issues for review. Simpson's first four complaints allege that two extraneous offenses were erroneously admitted into evidence while two prior bad acts of the victim were erroneously excluded from evidence. She also contends that the court erred in allowing improper jury argument from the State. Finding no error, we will affirm the judgment.

## FACTS

In January or February of 1996, Geronimo Dehoyas responded to a notice that Simpson had placed in the newspaper seeking male companionship. They began an intimate, but noncommital, relationship. Simpson sought to spend more and more time with Dehoyas, but Dehoyas did not wish to have a serious, long-term relationship. As a result, Dehoyas attempted to "distance" himself from Simpson. Unhappy with the rejection, Simpson wrote multiple letters to Dehoyas professing her feelings for him and vowing to "never give up" because she loved him too much to let him go. She also began showing up at Dehoyas' home uninvited, leaving only when forced by the police.

On September 9, 1996, Simpson called Dehoyas wishing to discuss their relationship. Dehoyas declined, but fearing Simpson would show up anyway, decided to pack a bag and leave for the night. Not seeing anyone, Dehoyas began to back out of his driveway when he hit Simpson with his truck. Apparently, she had parked her car around the block so that Dehoyas would not call the police upon seeing her drive up. Simpson complained that her knee was injured, so Dehoyas took her into his home and gave her ice for the knee. At this point, it was late in the evening and Simpson refused to leave, so Dehoyas went to sleep.[1]

Around 7:00 or 8:00 the next morning, Dehoyas awoke to discover that he had a knife wound to his chest. Simpson explained that she "didn't mean to do it," and went to the closet to get Dehoyas a clean shirt. Seeing the knife, Dehoyas took it and demanded that Simpson leave his home. A fight ensued, and Simpson once again gained control over the knife. Dehoyas testified that he attempted to escape, but that Simpson caught him before he could leave the house. They struggled, and Dehoyas was seriously injured by multiple stab wounds, one puncturing his lung and one revealing his intestines.[2]

In fear for his life, Dehoyas asked Simpson to either call 9-1-1 or take him to a hospital. She initially refused. Eventually, Simpson did drive Dehoyas to two different hospitals but, upon seeing police officers, she refused to stop. Simpson then drove nearly 100 miles to Cisco, Texas, before stopping at a medical clinic. By this time, it was after noon and the clinic was closed. A maintenance worker radioed for help, and soon the police and EMT arrived to find Dehoyas sitting on the ground barely conscious, literally holding his intestines.

Simpson told the authorities that Dehoyas was Jerry Perez and that she and Perez (Dehoyas) had picked up a hitchhiker who had inflicted the injuries on Dehoyas. Once he was away from Simpson, Dehoyas was able to tell the authorities that she had attacked him. Dehoyas was eventually transported back to Fort Worth by helicopter. He required two surgeries to repair a punctured lung, a lacerated liver, a cut to his neck, and injured bowels. Simpson was arrested shortly thereafter.

## EXTRANEOUS OFFENSES

Simpson's first two issues complain that the court erred in admitting evidence of two extraneous offenses that occurred on July 30, 1996 and September 4, 1996. Dehoyas testified that, on July 30, Simpson kicked in his back door because he would not let her into his home. Dehoyas was forced to call the police, and the police escorted Simpson from the home. Dehoyas further testified that on September 4, Simpson came to his home even though he had specifically told her that she was not welcome. The police were once again called to escort her from the home. Simpson complains on appeal that this evidence should not have been admitted because, at the point in the trial when this testimony was elicited, she had not yet testi-

---

1. There is a discrepancy regarding the time frame of events. Dehoyas stated that he had to be at work at 4:30 in the morning, so he went to sleep a little after midnight. Simpson testified that Dehoyas hit her with his truck around 4:30 in the morning, that he went to sleep around 6:00 in the morning, and that he did not have to be at work until 11:00.

2. Although she admittedly had the knife, Simpson testified that Dehoyas chased her through the house.

fied.[3] Further, she argues, without reference to any authority, that because neither of these incidents involved a knife, and because there was no testimony that she committed the aggravated assault because of the circumstances surrounding the extraneous offenses, there was no basis for admitting the testimony. We disagree.

■ We will defer to the trial court's rulings in determining whether evidence of other crimes has relevance apart from character conformity, so as to be admissible, and we will overrule the court's decision only when finding that it was outside the bounds of reasonable disagreement. *See Booker v. State,* 929 S.W.2d 57, 62–3 (Tex.App.—Beaumont 1996, pet. ref'd). The threshold inquiry is whether the evidence is relevant to prove a material issue other than character. *Id.* (citing *Turner v. State,* 754 S.W.2d 668, 672 (Tex.Crim.App.1988)). Rule 404(b) of the Rules of Evidence provides for the admissibility of evidence regarding "other crimes, wrongs or acts." See TEX.R. EVID. 404(b).[4] Rule 404(b) provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

*Id.*

■ Evidence of these incidents is relevant to motive and intent. Although motive is not an essential element of a criminal offense, the State is entitled to prove motive "if it is relevant as a circumstance tending to prove the commission of the offense." *Gosch*

v. *State,* 829 S.W.2d 775, 783 (Tex.Crim.App. 1991); *DeLeon v. State,* 937 S.W.2d 129, 135–36 (Tex.App.—Waco 1996, pet. ref'd). Furthermore, if the evidence "makes [Simpson]'s criminal intent more likely than would be assumed in its absence," then it is relevant and admissible. *Prieto v. State,* 879 S.W.2d 295, 298 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd) (citing *Plante v. State,* 692 S.W.2d 487, 493 (Tex.Crim.App.1985)). The fact that Simpson has repeatedly forced herself into Dehoyas' home and refused to accept the end of the relationship, leaving only when forced out by the police, shows that she had a reason for and a purpose in attacking Dehoyas. This evidence helps the jury understand Simpson's infatuation with Dehoyas and her increasing anger and anxiety over the fact that he no longer wanted to have a relationship with her.

Because the evidence is relevant to proving motive and intent, we hold that the trial court did not abuse its discretion in admitting the evidence. Issues one and two are overruled.

## CHARACTER OF THE VICTIM

■ Simpson's third and fourth issues urge that the court erred in excluding testimony regarding two prior acts of violence committed by Dehoyas. Outside the presence of the jury, Simpson testified that on one occasion Dehoyas choked her during sex while making references to "Mike" and "Ike." She testified that she believed he was referring to Mike Tyson and Ike Turner. Simpson testified that on another occasion, Dehoyas attempted to push her in front of a moving car because she refused to give him the keys to his truck. The State objected to the admission of this evidence under Rule 608(b). Rule 608(b) states:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule

---

3. Perhaps this argument would have some merit if the basis for admitting the evidence was solely to rebut Simpson's claim of self-defense. Because the court admitted this evidence on the basis that it is demonstrative of motive and intent, that it was offered during the State's case-in chief is of no consequence.

4. Although Simpson was tried prior to the effective date of the new rules of evidence, Rule 404(b) is fundamentally identical to its predecessor. Thus, we cite to the new rule.

609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.

TEX.R. EVID. 608(b). Simpson relied on Rule 107 to show admissibility at trial, and maintains on appeal that this is the basis for the admissibility of this evidence.

Simpson argues that Rule 107, the "Rule of Optional Completeness," applies to acts as well as writings, and that "once a matter is brought up in a proceeding, the other side has a right to introduce related evidence to fully explain the matter, even though the additional evidence might not otherwise be admissible." The "matter," as Simpson refers to it, is apparently the whole of her relationship with Dehoyas. Simpson cites only one case to support her position.[5] *See Callaway v. State*, 818 S.W.2d 816, 827 (Tex. App.—Amarillo 1991, pet. ref'd).

■■■ The rationale behind Rule 107 is that an opponent should be permitted to correct any misleading impressions left with the jury through the introduction of only a portion of evidence. TEXAS RULES OF EVIDENCE MANUAL, HULEN D. WENDORF, ET AL., I–84 (4th ed.1995). The decision as to which portion of evidence should be introduced rests initially with the proponent. *Id.* For the opponent to admit other evidence under Rule 107, she must show that what she wishes to offer is either "on the same subject" or is "necessary to make it fully understood or to explain." TEX.R. EVID. 107.

In *Callaway v. State*, during cross-examination of a witness, the appellant brought up "an event where a pistol was discharged" on June 22. *Callaway*, 818 S.W.2d at 824–27. Thereafter, the State noticed its intent to introduce the fact that on or about June 22, Callaway had conspired to threaten the deceased with a firearm. *Id.* Over Callaway's objection, the court, after inquiring into the bases for and against admitting the evidence, ruled that, within the parameters proffered to the court, the evidence was admissible. *Id.* Once the State rested and had failed to produce evidence of any criminal activity on Callaway's part on June 22, Callaway re-

quested the court to instruct the jury to disregard any testimony regarding the June 22 incident. *Id.* The court, remarking that it found no culpability on Callaway's part regarding the June 22 event, denied the request, and overruled her motion for a mistrial. *Id.* In overruling Callaway's points on appeal, the court noted:

It is documented that the evidence was admitted after appellant inquired of Saragusa concerning his providing her with a pistol and attempting to fix the time in relation to "an event where a pistol was discharged" on "June 22nd." Once a matter is injected into the proceeding, evidence to fully explain the matter is relevant and admissible, Rule 107, Texas Rules of Criminal Evidence, even though the evidence might not otherwise be admissible. *Parr v. State*, 557 S.W.2d 99, 102 (Tex. Crim.App.1977).

*Id.* The court went on to state that the trial court did not abuse its discretion in refusing to instruct the jury to disregard the evidence or in refusing to declare a mistrial. *Id.* We find this case fully distinguishable.

■■■ There was only one "event" in question in *Callaway*. The entirety of the "event" occurred on June 22. Once the defense mentioned the discharge of a weapon, the State arguably had a right to explain the events surrounding the discharge of the weapon. In the present case, Simpson complains about the exclusion of testimony regarding two separate events which allegedly occurred during the relationship. Simpson alleged that Dehoyas attempted to push her in front of a moving car "after the incident on September 4th," but gives no indication of how either this incident or the choking incident may explain the events surrounding the extraneous offenses already discussed. She does not claim that either act occurred on the occasions mentioned by the State, and we fail to see how evidence of Dehoyas' bad acts are "on the same subject" or could "help explain" Simpson's extraneous offenses. They are two separate issues. We do not disagree with Simpson's argument that Rule 107 can

---

5. In conceding error, the State mentions a second case, *Hill v. State*, 783 S.W.2d 257, 260 (Tex.App.—Texarkana 1989, no pet.). In *Hill*, the court merely notes that an argument is raised regarding Rule 107, but that it was not preserved for appeal.

apply to acts. In this case, however, there is no "part of an act" which needs to be "fully understood" through other evidence.

 The determination of admissibility of evidence lies within the discretion of the trial judge, and rulings on admissibility will not be disturbed on appeal if they are supported by the record. *Lucas v. State*, 791 S.W.2d 35, 47 (Tex.Crim.App.1989). The court did not abuse its discretion in excluding this evidence. Issues three and four are overruled.

### IMPROPER JURY ARGUMENT

 Simpson's fifth issue urges that the court erred "by allowing the State to invite the jury to speculate about what [Simpson] would do if she got out of prison." The objectionable argument occurred at the end of the punishment stage:

[Prosecutor]: The criminal justice system has let Geronimo [Dehoyas] down. Why in the world was this lady even out to do the things that she did? You now are part of the criminal justice system and you have the ability to stop a violent offender. It may not be easy, but it's so necessary.

Look at her history. Nothing has worked with her. You know what's going to happen when she gets out.

Jury argument is to be confined to four permissible areas: 1) summation of the evidence; 2) reasonable deductions from the evidence; 3) answers to the argument of opposing counsel; or 4) pleas for law enforcement. *Lagrone v. State*, 942 S.W.2d 602, 620 (Tex.Crim.App.1997); *Wilson v. State*, 938 S.W.2d 57, 59 (Tex.Crim.App.1996); *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex.Crim.App. 1995); *Hoffman v. State*, 922 S.W.2d 663, 675 (Tex.App.—Waco 1996, pet. ref'd). When a jury argument falls outside these areas, a potential for error occurs. *See, e.g., Lagrone*, 942 S.W.2d at 619; *Dinkins*, 894 S.W.2d at 357.

We find that this argument falls within the scope of proper jury argument. Because Simpson was tried as an habitual offender,

her criminal history was part of the evidence. Thus, the State's comments regarding Simpson's probable continuance of criminal behavior was a reasonable deduction from the evidence. Furthermore, it was a proper plea for law enforcement. *See, e.g. Cook v. State*, 858 S.W.2d 467, 477 (Tex.Crim.App. 1993) (argument was proper in capital case where prosecutor asked rhetorical questions such as: How many victim's wives will have to grieve? How many victims are going to be kidnapped and assaulted?).

Simpson cites only one case to support her claim that the argument was improper. *See Livingston v. State*, 531 S.W.2d 821, 823 (Tex.Crim.App.1976). In *Livingston*, the defendant was tried for aggravated perjury because he had denied two prior DWI convictions. The State argued during the guilt-innocence stage of the trial that, if the jury let him go, he would more than likely end up killing someone. The Court of Criminal Appeals acknowledged that this was an improper argument, but held that the court's instruction to disregard cured the error. *Id.* This case is distinguishable. In *Livingston*, the crime was perjury. Here, Simpson was tried for aggravated assault with a deadly weapon. The evidence shows that she is an habitual offender. Furthermore, the argument in *Livingston* came during the guilt-innocence phase of the trial. Here, the State's argument was made at the punishment stage. We do not find Simpson's argument persuasive. Finding that the State's argument was proper, we overrule issue five.

The judgment is affirmed.