# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00345-CR

**Pedro Edwardo Gutierrez alias Pete Gutierrez, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT**
**NO. 0995317, HONORABLE BOB PERKINS, JUDGE PRESIDING**

A jury found appellant Pedro Edwardo Gutierrez guilty of the murder of Keith Watson and assessed punishment at fifty years= imprisonment and a $10,000 fine.  *See* Tex. Pen. Code Ann. '19.02(b)(1) & (2) (West 2002).  We will affirm the conviction.

## DISCUSSION

By eleven points of error, appellant contends: (1) the evidence is factually insufficient to support the conclusion that he intended to cause death or serious bodily injury; (2) the evidence is factually insufficient to support the conclusion that he did not act in self-defense; (3) the evidence is factually insufficient to support the conclusion that he did not kill Watson with sudden passion arising from an adequate cause; (4) he was deprived of the right to a fair trial because the prosecution failed to timely disclose exculpatory evidence concerning Watson=s character for violence and his extensive prior criminal history of violent acts; (5) he was deprived of the right to a fair trial because the district court refused to

order the prosecution to reveal certain exculpatory evidence until after trial commenced; (6) he was deprived of the right to a fair trial because the district court refused to grant a mistrial on the morning of trial due to the untimely disclosure of voluminous uninvestigated evidence supporting the defensive theory of self-defense; (7) the district court abused his discretion in overruling appellant=s motion for new trial; (8) the district court erred by prohibiting defense counsel from cross-examining a witness about Watson=s prior acts of violence; (9) the district court erred by permitting the prosecution to present a police narrative of hearsay testimony; (10) the district court erred by refusing to admit evidence that Watson carried an illegal knife; and (11) he was deprived of the right to a fair trial because the district court overruled appellant=s motion for a mistrial due to the court=s ill-treatment of potential jurors.

*Factual Sufficiency*

By points of error one and two, appellant contends that the evidence is factually insufficient to sustain his conviction on the basis that he intentionally and knowingly caused Watson=s death or that, with intent to cause serious bodily injury, he committed an act clearly dangerous to human life. By point of error three, appellant challenges the factual sufficiency of the evidence to establish that he did not kill with sudden passion arising from an adequate cause.

A review of the factual sufficiency of the evidence begins with the presumption that the evidence supporting the judgment was legally sufficient. *See Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). In such a review, we consider the evidence without employing the prism of Ain the light most favorable to the verdict.@ *Id*. at 129. We consider all the evidence impartially, comparing evidence that tends to prove the existence of a disputed fact with evidence that tends to disprove that fact. *Santellan*

2

*v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). The verdict or judgment is to be set aside only when the factual finding is against the great weight and preponderance of the evidence so as to be clearly wrong and unjust. *Clewis*, 922 S.W.2d at 129. In a factual-sufficiency analysis, it must be remembered that the trier of fact is the sole judge of the weight and credibility of the testimony. *See Santellan*, 939 S.W.2d at 164. The appellate court should be on guard against substituting its own judgment in these matters for that of the trier of fact. *Id*. One principle of the factual-sufficiency analysis is deference to the findings of the jury. *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Moreover, A[a] decision is not manifestly unjust merely because the jury resolved conflicting views of evidence in favor of the State.@ *Id*. at 410.

In conducting a *Clewis* sufficiency review of the elements of a criminal conviction, an appellate court must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine the confidence in the jury=s determination, or that the proof of guilt, although adequate when taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

The indictment charges that appellant

> intentionally and knowingly cause[d] the death of . . . Watson, by stabbing him . . . with a knife, which knife, in the manner and means of its use and intended use, was capable of causing death and serious bodily injury, [a]nd . . . with intent to cause serious bodily injury to . . . Watson, commit[ted] an act clearly dangerous to human life, to-wit: stabbing him . . . with a knife, which knife, in the manner and means of its use and intended use, was capable of causing death and serious bodily injury, thereby causing the death of . . . Watson.

**3**

When the indictment alleges alternate theories of committing the same offense (here murder), it is proper for the jury to be charged in the disjunctive and to return a general verdict of guilty. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991); *see* Tex. Code Crim. Proc. Ann. art. 37.07, ' 1(a) (West 1981) (verdict must be general).

The district court=s charge to the jury provided, *inter alia*, that the jury could find appellant guilty of murder if the jury believed beyond a reasonable doubt that appellant

> intentionally and knowingly cause[d] the death of . . . Watson, by stabbing him . . . with a knife, which knife, in the manner and means of its use and intended use, was capable of causing death and serious bodily injury, thereby causing the death of . . . Watson, OR that [appellant] . . . with intent to cause serious bodily injury to . . . Watson commit[ted] an act clearly dangerous to human life, to wit: stabbing him . . . with a knife, which knife, in the manner and means of its use and intended use, was capable of causing death and serious bodily injury, thereby causing the death of . . . Watson.

The conviction will be upheld if the evidence is sufficient to support a finding of guilt under any one of the theories submitted. *Kitchens*, 823 S.W.2d at 258; *Nevarez v. State*, 847 S.W.2d 637, 643 (Tex. App.CEl Paso 1993, pet. ref=d).

Appellant argues that the evidence fails to show that he intended to kill or seriously injure Watson, as required for a conviction under the indictment. We hold the facts are sufficient to support the conviction. On October 31, 1999, appellant hosted a Halloween party at his residence. Watson, accompanied by his friend Paul Davies, arrived at the party around 10:00 p.m. Witnesses testified that at some point Watson engaged in a verbal altercation with a party guest inside appellant=s home. There was no physical contact between Watson and the guest, nor were weapons drawn. Appellant asked Watson to

**4**

leave. There was testimony that Watson did not want to leave because he resented being blamed for the altercation. Witnesses testified that Watson=s friends were successful in encouraging him to leave the party and that they began walking toward their car.

As Watson was leaving, appellant went to the front yard of his home where he confronted Watson. Witnesses heard appellant ask Watson if he wanted to go Aone-on-one,@ meaning that appellant asked Watson if he wanted to fight. Watson took off his shirt. There was no indication that he was carrying a weapon. Appellant and Watson began punching one another. Appellant pulled a knife from his back pocket and began waving it at Watson. Appellant stabbed Watson in the chest, puncturing his heart and killing him. There was testimony that witnesses did not realize Watson had been stabbed until he tried to scream and then fell to the ground. Appellant ran into his house, took off his shirt, and hid it in his couch. Appellant threw the knife away, and it was never recovered.

When first questioned about the event, appellant denied that he was involved in a physical confrontation with Watson and blamed Watson=s death on an unknown Hispanic male. After being confronted with information gathered from other witnesses, appellant admitted he stabbed Watson.

By its verdict, the jury found that appellant intentionally or knowingly killed Watson, or the jury found that he committed an act clearly dangerous to human life with the intent to seriously injure Watson. A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. Tex. Pen. Code Ann. ' 6.03(a) (West 1994). A person acts knowingly with respect to a result of his conduct when he is aware that it is reasonably certain to cause the result. *Id.* '

6.03(b). Proof of a culpable mental state generally relies on circumstantial evidence. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978).

Appellant=s claim that he did not intend to kill Watson is inconsistent with his conduct. Appellant admitted to stabbing Watson, and numerous witnesses testified they observed appellant stab Watson. Although appellant claims he acted in self-defense, Watson was not in possession of a weapon, nor had he threatened appellant with deadly force. An autopsy of Watson=s body revealed that he had defensive wounds on his hands and stab wounds in his back. Stabbing Watson in the chest was an act clearly dangerous to human life from which the jury could infer the culpable intent or knowledge. The jury=s verdict was not against the great weight and preponderance of the evidence so as to be clearly wrong and unjust. *Johnson*, 23 S.W.3d at 11. We hold that there was sufficient evidence to support the jury=s verdict and overrule appellant=s first two points of error.

By point of error three, appellant argues that the evidence fails to show that he did not kill with sudden passion arising from an adequate cause. Evidence that a defendant acted under the influence of sudden passion is a mitigating factor raised at the punishment phase of a murder trial, which the defendant must prove beyond a reasonable doubt. Tex. Pen. Code Ann. ' 19.02(d). Section 19.02(a)(2) defines Asudden passion@ as Apassion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.@ *Id*. ' 19.02(a)(2). Section 19.02(a)(1) defines Aadequate cause@ as Acause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.@ *Id*. ' 19.02(a)(1).

**6**

There was no evidence indicating that appellant acted with sudden passion arising from an adequate cause. There was testimony that appellant was not arguing with Watson prior to the physical confrontation that resulted in Watson=s death. Although witnesses testified that appellant was angry, anger does not rise to the level of adequate cause. *Naasz v. State*, 974 S.W.2d 418, 425 (Tex. App.CDallas 1998, pet. ref=d) (citing *Mason v. State*, 798 S.W.2d 854 (Tex. App.CHouston [14th Dist.] 1990, no pet.)).

We overrule point of error three.

### *Discovery Violations*

By points of error four and five, appellant contends that he was deprived of the right to a fair trial because the prosecution failed to timely disclose exculpatory evidence of the victim=s character for violence and extensive prior criminal history of violent acts and because the trial court refused to order the prosecution to reveal the Ahandle-bys@[1] of the victim until after trial commenced.

---

[1] AHandle-bys@ are the results of searches conducted through local police databases of names that appear anywhere in police reports. Here, running the victim=s handle-bys would generate a list of any incident where Watson=s name appeared in a police report in any capacity, including as a witness, a victim, or a suspect.

Before trial, appellant filed several motions,[2] asking the State to produce any evidence relating to Watson=s violent character. He also specifically requested that the State reveal any information regarding Watson=s handle-bys. The State allowed appellant access to its file, which reflected that Watson had been arrested twice for assault and once for aggravated assault. However, the State did not produce Watson=s handle-bys until the conclusion of jury selection. Trial on the merits began the next day. That morning, instead of requesting a continuance, appellant moved for a mistrial[3] based on the State=s tardy disclosure of large amounts of material relating to Watson=s handle-bys. The court denied the motion. Appellant also asked the court to order the State to subpoena witnesses contained in the handle-bys, and the court granted this request. The State subpoenaed five police officers as ordered by the court; however, only one police officer actually appeared to testify. Appellant never moved for a continuance.

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to

---

[2] Motions filed by appellant included: AMotion for Discovery of Exculpatory and Mitigating Evidence,@ AMotion for Discovery,@ and AMotion for Discovery of the Arrest and Conviction Records of State=s Witnesses.@

[3] Although the motion for mistrial does not appear in the trial record, numerous, undisputed references to it were made in appellant=s motion for new trial and throughout the hearing on that motion. Appellant=s trial counsel testified:

> And the problem was, the reason I moved for a mistrial the morning that the trial started after I discovered the victim=s handle-bys, is I was faced with the choice of asking for continuance . . . or ask[ing] for the Court to allow me to start over and declare a mistrial.

Because the district court and the State had the opportunity to dispute that a motion for mistrial was made and did not, we will presume, for the purposes of this opinion, that appellant made such a motion.

8

guilt or punishment. However, when previously withheld evidence is disclosed at trial, the defendant=s failure to request a continuance waives any *Brady* violation. *Williams v. State*, 995 S.W.2d 754, 762 (Tex. App.CSan Antonio 1999, no pet.) (citing *Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. 1982)). At no time after the prosecution disclosed the handle-bys did appellant request a continuance; therefore, any *Brady* violation was waived.

Appellant directs this Court to *Hampton v. State*, 36 S.W.3d 921 (Tex. App.CEl Paso 2001, pet. granted), and *Nickerson v. State*, 69 S.W.3d 661 (Tex. App.CWaco 2002, no pet. h.), to support his contention that a motion for mistrial, as opposed to a motion for continuance, is sufficient to prevent a waiver of a *Brady* allegation. Appellant=s reliance on these cases is misplaced. In *Hampton*, Aimmediately before the State rested its case-in-chief,@ the State produced a police report that the defendant asserted contained exculpatory evidence. 36 S.W.3d at 925. The defendant Arequested a *continuance* for the purpose of locating two witnesses mentioned in this report.@ *Id.* (emphasis added). The trial court denied the motion as well as a subsequent motion for mistrial. *Id.*

In *Nickerson* the State produced a videotape at the punishment phase of the trial Adepicting an episode in the county jail in which Nickerson engaged in aberrant behavior.@ 69 S.W.3d at 672. The court of appeals noted that A[t]he State does not question that the videotape is >favorable= to Nickerson=s insanity defense,@ *id.* at 676, and held that the trial court erred in overruling the defendant=s motion for mistrial Apremised on an alleged *Brady* violation,@ *id.* at 672, 676. The difference between *Nickerson* and the case now before us is readily apparentCa continuance will not assist the defendant when potentially

**9**

exculpatory evidence is produced *after* the guilt/innocence phase of a trial has concluded. Under such circumstances, a defendant=s only remedy is through a motion for mistrial.

We overrule appellant=s fourth and fifth points of error.

By point of error six, appellant asserts that he was deprived of the right to a fair trial because the district court refused to grant a mistrial on the morning of trial due to the untimely disclosure of voluminous uninvestigated evidence supporting the defensive theory of self-defense. A careful review of the record shows that although appellant made motions for a mistrial based on ill-treatment of potential jurors, he never moved for mistrial based on the theory he now asserts on appeal. To preserve an issue on appeal, appellant must have made a timely objection that specifically stated the legal basis for the objection. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). An objection stating one legal basis may not be used to support a different theory on appeal. *Id*. We overrule point of error six.

Appellant timely filed a motion for new trial contending, *inter alia,* that the State suppressed evidence favorable to the accused in violation of *Brady*, thereby violating appellant=s constitutional rights. The district court denied appellant=s motion for new trial. By his seventh issue, appellant contends this was an abuse of the district court=s discretion. *See Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).

Appellant presented argument on his motion for new trial that the district court committed a material error by denying his motion for mistrial for an alleged *Brady* violation. Appellant argues that the State=s failure to provide the Ahandle-bys@ of Watson until ordered by the trial judge the night of *voir dire* serves as a *Brady* violation. Appellant argues that because this information was not provided to him until after trial commenced, his defense was undermined and he was deprived of a fair trial. Appellant argues

**10**

that the Ahandle-bys@ confirmed Watson=s violent character and the Adegree of terror he can strike in his victims.@ However, in the two months between trial and the hearing on the motion for new trial, appellant did not produce any witnesses to substantiate these claims. Therefore we hold that the district court did not abuse his discretion in denying appellant=s motion for new trial and overrule appellant=s seventh point of error.

### *Watson=s Prior Acts of Violence*

By his eighth point of error, appellant contends that the district court erred by prohibiting defense counsel from cross-examining Paul Davies, a State=s witness, about Watson=s prior acts of violence. Appellant attempted to question Davies concerning Watson=s prior misconduct, to which the State objected. Appellant questioned Davies on *voir dire* and asked him whether he knew that Watson was arrested for carrying a knife, that Watson punched a man in the face and broke his nose and jaw, that Watson assaulted a person by punching him in the face and kicking him while he was on the ground, and that Watson assaulted his girlfriend.

Following the *voir dire* examination of the witness, appellant rebutted the State=s objection on the basis of Texas Rules of Evidence 404(a)(2) and 405.

> [Defense Counsel]: Judge, I think that clearly under Rule 404[a](2), I am allowed to elicit, at a minimum, the victim=s reputation or this witness= opinion. He is qualified to give an opinion on his character for truthfulness and law-abidingnessBor I=m sorry, his pertinent character trait for violence.

**11**

And under 405, if this witness says that it=s noBI am absolutely entitled and the law is clear, I can ask the Adid you know@ questions to question for the jury the basis of his opinion.

And 404[a](2) and 405, these are standard questions that are always permitted where there=s a contested issue on who was the aggressor. And it goes to the victim=s intent and ability to inflict the serious bodily injury that my client reasonably feared

A lengthy discussion between the court and appellant=s counsel concerning rule 405 followed. The court explained to appellant=s counsel that because the State had not called Davies as a reputation or opinion witness, appellant could not go into instances of specific conduct.

[Defense Counsel]: Okay. And would the Court allow, without my giving the details of those other offenses, to just say, ADo you know about the assault on this day?@

The Court: I will not, because that seems to me a clear violation of 405.

. . . .

The Court: Okay. I=ve ruled on the objection.

There was no discussion of rule 404(a), which provides that evidence of a particular character trait of the victim may be admissible to rebut evidence of the same trait. Tex. R. Evid. 404(a).

Appellant does not assert error with regard to the district court=s ruling against him based on rules 404(a) and 405. Instead, he now argues that the testimony was admissible under rule 404(b), a different argument than that raised at trial. Rule 404(b) allows evidence of other crimes, wrongs, or acts to show Amotive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.@ This is a wholly separate basis for allowing otherwise inadmissible evidence of the victim=s prior

acts of violence than that offered by appellant to the district court here. Rules 404(a) and 405 disallow evidence of specific acts of victim to show character. *Tate v. State*, 981 S.W.2d 189, 192 (Tex. Crim. App. 1998). Rule 404(b), on the other hand, is an inclusionary rule where Aevidence of other wrongs, crimes, or acts is allowed so long as it is not offered to prove character or propensity to act or behave in a certain fashion.@ *Id.* at 193. Appellant did not argue for the admission of the testimony on such ground. An argument stating one legal basis may not be used to support a different legal theory on appeal. *Rezac*, 782 S.W.2d at 870. In order to properly preserve error for appeal, appellant must show that he stated the grounds for his argument Awith sufficient specificity to make the trial court aware of [his] complaint.@ Tex. R. App. P. 33.1. We hold that appellant failed to preserve his complaint and overrule the eighth point of error.

### *Hearsay Objections*

By his ninth point of error, appellant asserts that the district court erred by permitting the prosecution to present a police narrative of hearsay. Appellant contends that over his hearsay objections, the district court permitted three police officers to testify to out-of-court statements made by witnesses to the stabbing. However, the record reflects that appellant only received an adverse ruling to his hearsay objection to the testimony of Officer James Harrell. Appellant made no hearsay objection to Officer John Lengenfeld=s testimony, and all hearsay objections appellant made during Officer Mark Spangler=s testimony were sustained. Therefore we will review only Officer Harrell=s testimony for a violation of the hearsay rule.

The district court allowed Officer Harrell to testify over appellant=s hearsay objection to what Roberto Ellis, a witness to the stabbing, told the officer the night of the stabbing. Officer Harrell

**13**

testified that Ellis told him that he was inside when the stabbing occurred. Appellant objected to this testimony as hearsay, and the trial court overruled the objection on the prosecution=s contention that the testimony fell within the excited-utterance exception to hearsay. Appellant then questioned Officer Harrell on *voir dire*. Appellant argued that because Ellis did not observe the startling event and because under the excited-utterance exception the statements must directly relate to the startling event, the statements did not fit into the excited utterance exception to hearsay. The prosecution pointed out that there is no requirement that the declarant witness the startling event for his statement to fall under the excited-utterance exception. The court overruled appellant=s objection.

We review the admission of evidence for an abuse of discretion. *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001). We will affirm the trial court=s decision if it is within Athe zone of reasonable disagreement.@ *Id*. The excited-utterance exception states that a Astatement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition@ is admissible. Tex. R. Evid. 803(2). The exception is founded on the belief that statements made as a result of a startling or exciting event are involuntary and do not allow the declarant an adequate opportunity to fabricate, thereby ensuring enough trustworthiness to fall within the exception. *See Bondurant v. State*, 956 S.W.2d 762, 765 (Tex. App.CFort Worth 1997, pet. ref=d). The hearsay statement contains the sufficient requisite indicia of reliability to be admissible when the statement is shown to be a spontaneous utterance. *Id*. In order for the utterance to be admissible under the rule 803(2) exception, the statement must be the product of a startling event where the declarant was dominated by the emotion, excitement, fear, or pain of the event, and related to circumstances of the startling event. *Id*. The

**14**

critical factor is whether the declarant made the statement while dominated by the emotion arising from a startling event or condition. *Id.*

Officer Harrell testified that the scene was Apretty hectic@ and people were running around and screaming. Officer Harrell testified that when he spoke with Ellis, Ellis was Ashaking, as if he was in shock,@ and that he had blood splatters on his shirt. The evidence indicates Ellis made his statements to Officer Harrell while dominated by emotion arising from the stabbing.

Appellant argues that the statements were not within the excited-utterance exception because the witness did not volunteer his statement but merely was answering police questions. The court of criminal appeals recently reiterated that it is not dispositive that the statement is in answer to a question. *Salazar*, 38 S.W.3d at 154. The fact that the statements were made in answers to questions is simply a factor to consider in determining whether the statement is admissible under the excited-utterance exception. *Id.*

We agree with the district court and hold that the statements made to Officer Harrell were excited utterances within the rule 803(2) exception. We overrule appellant=s ninth point of error.

### *Evidence that Watson Carried an Illegal Knife*

By his tenth point of error, appellant contends that the district court erred by refusing to admit evidence that Watson, on an earlier occasion, carried an illegal knife. Appellant proffered the opinion testimony of Officer Keith Suits that Watson was neither peaceful nor law-abiding. The State objected to Suits=s testimony on the grounds that because Suits had had only one encounter with Watson, he lacked sufficient knowledge from which to base an opinion. The State also objected on the grounds that Suits did

**15**

not observe Watson=s behavior and that the probative value of such evidence was substantially outweighed by its prejudicial effect. The district court overruled these objections.

Officer Suits testified that Watson was neither peaceful nor law-abiding. On cross-examination, the State asked the following:

Q: At the time you contacted him, there was some fight at a hotel or something like that B some disturbance at a hotel, correct?

A: Correct, appeared to be a high school party.

Q: When you arrived there, he was intoxicated?

A: Right.

Q: You placed him under arrest?

A: Correct.

Q: That=s against the law to be intoxicated in public, correct?

A: Yes, it is.

At a bench conference, appellant argued that the State had Aopened the door@ to testimony that following the arrest, Officer Suits found an illegal knife on Watson=s person. Appellant asserted that the State only brought out part of the incident and that he should be able to ask about the weapon. The district court overruled appellant=s objection.

Appellant asserts that, pursuant to the rule of optional completeness, he was entitled to question Suits about the details of the offense because the State only brought out part of the offense and it

**16**

was necessary to inquire further so that the jury could fully understand the offense. *See* Tex. R. Evid. 107. We disagree.

The rule of optional completeness provides in part that when a portion of an act is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act which is necessary to make it fully understood or to explain the same may also be given in evidence. Tex. R. Evid. 107. Evidence that is used to fully explain a matter opened by the other party need not be otherwise admissible. *See Parr v. State*, 557 S.W.2d 99, 102 (Tex. Crim. App. 1977). However, the evidence offered for context must be "on the same subject" as the portion already admitted. *See* Tex. R. Evid. 107; *Jernigan v. State*, 589 S.W.2d 681, 694-95 (Tex. Crim. App. 1979). Here, the excluded evidence does not appear to be "on the same subject" of Watson=s arrest for public intoxication. It was only after Suits arrested Watson for public intoxication that he discovered Watson was carrying an illegal knife. The State did not inquire beyond the arrest for public intoxication, and, therefore, did not "open the door" for the appellant to inquire into the arrest for carrying an illegal knife. Appellant=s tenth point of error is overruled.

### *Mistreatment of Potential Jurors*

By his final point of error, appellant argues that he was deprived of the right to a fair trial because the district court overruled his motion for a mistrial due to the court=s ill-treatment of potential jurors. Appellant urges that the court should have granted a mistrial because the potential jurors were tired, hot, and hungry. We review a trial court=s denial of a motion for mistrial under an abuse-of-discretion

standard. *Trevino v. State*, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999); *Bryant v. State*, 25 S.W.3d 924, 926 (Tex. App.CAustin 2000, pet. ref=d).

The record reflects that *voir dire* was scheduled to begin at 2:00 p.m. and was postponed until shortly after 3:00 p.m. At 3:15 p.m. appellant asked the court to rule on discovery motions, but the court began *voir dire*. At that time, the State conducted a two-hour *voir dire* examination. When the State concluded, appellant moved for a mistrial on the basis that the potential jurors were Ahot@ and Asleepy@ and it was unfair to require appellant to proceed with *voir dire*. The district court denied appellant=s motion. The jurors were recessed for ten minutes and were told where they could obtain snacks. Following this recess, appellant conducted his *voir dire* examination.

We hold that it was not unfair for appellant to proceed with *voir dire* late in the afternoon. There is nothing in the record to indicate that appellant=s examination of potential jurors was hindered by the lateness of the hour or the fact that the jurors were tired and hungry. Appellant was able to conduct a thorough *voir dire* examination. Furthermore, we find no evidence in the record that the district court=s decision to proceed with *voir dire* posed a threat to fairness or impeded the fact-finding process. Appellant=s eleventh point of error is overruled.

## CONCLUSION

Having overruled appellant=s assertions of error, we affirm the district court=s judgment.

Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices Yeakel and Puryear

Affirmed

Filed:   August 30, 2002

Publish