# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00291-CR

---

**Jon Hunter Jervis, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 453RD DISTRICT COURT OF HAYS COUNTY
### NO. CR-19-2212-E, THE HONORABLE SHERRI TIBBE, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Jon Hunter Jervis was convicted of the offense of capital murder and sentenced to life imprisonment. *See* Tex. Penal Code §§ 12.31, 19.03. On appeal, Jervis contends that the trial court erred by denying his request to admit two letters written by him under the rule of optional completeness. *See* Tex. R. Evid. 107. We will affirm the trial court's judgment of conviction.

## BACKGROUND

Early in the morning on June 5, 2019, the police were called to an apartment after a resident noticed that the door to the apartment had been forced open. When the police arrived and entered the apartment, they found a deceased man later identified as Demarcus Trey Allen. In investigating the crime, the police interviewed Allen's roommates and neighbors and

reviewed surveillance footage from inside the apartment and other locations. Ultimately, Jervis was identified as a suspect, and he was later charged with capital murder.

During the ensuing trial, the State called multiple witnesses, including Allen's roommates, neighbors, and friends; police officers involved in the investigation; the medical examiner; one of Jervis's alleged accomplices; a forensic scientist who performed DNA testing; individuals involved in analyzing the contents and locations of phones and other electronics; and a firearm and toolmark examiner. During his case, Jervis called to the stand his roommate, his grandmother, a Texas Ranger, and a weapons expert. In addition, Jervis elected to testify. Multiple exhibits, including surveillance footage from the apartment and other locations, were admitted into evidence.

The evidence presented at trial, including admissions by Jervis, established that Jervis and two other individuals drove to the apartment intending to steal from the residents, that Jervis's accomplice forced open the apartment door, that Jervis brought a shotgun inside the apartment, that Allen was shot with a shotgun, that Jervis and one of his accomplices were also shot, that Jervis and his two companions drove away from the scene after the shooting started, and that Allen died from the injuries he sustained when he was shot. However, Jervis denied having any intention to hurt anyone and denied firing the shotgun. While on the stand, Jervis expressly denied having ever been involved in a shootout before that night and further denied having ever shot anyone.

Before the State began its cross-examination of Jervis, the State requested that the trial court admit into evidence portions of two letters that Jervis wrote while in jail. Specifically, the State asserted that the portions of the letters should be admitted because Jervis opened the door to their admission by claiming that he had never been involved in shootouts before and

2

had never shot a gun before.  After hearing the parties' arguments, the trial court admitted the evidence, and proceedings concluded for the day.  Shortly after the State began its cross-examination on the following day, a hearing was held outside the presence of the jury regarding whether Jervis's expert witness could be in the courtroom before testifying.  At that hearing, the State mentioned that it had the letters, and Jervis requested that the entirety of the two letters be admitted into evidence under the rule of optional completeness and argued that without the remainder of the letters to provide needed context, the meaning behind the statements at issue was changed.  After considering the parties' arguments, the trial court denied the request but explained that Jervis would be able to ask questions regarding the context in which the statements at issue were made.

During his cross-examination, Jervis again testified that he had never been in a shootout until the events in question, that he had never fired a gun, and that he only brought a gun on the night in question to use as a scare tactic.  At that point, the State questioned Jervis about letters that he wrote to a woman named Courtney while in jail, and he read portions of those letters to the jury.  The part of the first letter that Jervis read provided as follows:

> She made a GANGSTA as well.  She taught me to give respect but to demand it in return!  And I do the fool when I get disrespected!  I'm known for gangbanging, fighting, shootouts, kick doors, being a jack boy, etc.
>
> I love you
>
> – Hunter

The part of the second letter provided as follows:

> I'm always paranoid . . . because of all the things I've done in my life.  I have a bad temper.  I usually have a gun in arms reach if not I got a homeboy with me just in case some shit pops off (which it usually does).

After considering the evidence presented at trial, the jury found Jervis guilty of capital murder, and the trial court imposed a life sentence.

**DISCUSSION**

In one issue on appeal, Jervis asserts that the trial court erred by denying his request to admit the entirety of the two letters under the rule of optional completeness. *See* Tex. R. Evid. 107. More specifically, Jervis contends that the entire "letters were properly admissible under the optional completeness rule because they were from the same letters and on the same subject as the statements used to impeach [him]" and that failing to admit the entire letters "left the jury with a false impression." Regarding the second and lengthier letter, Jervis characterizes his letter as "exud[ing] bravado to impress Courtney after seemingly attempting to explain a misunderstanding with respect to another female." Further, he emphasizes that the letter attempted "to mix the tough guy bravado with the persona of a kind gentle person who is a family man" and urges that the statement regarding having guns within reach and regarding "shit pop[ping] off" were meant to impress Courtney and to help maintain a romantic relationship. Regarding the first letter, he contends that the full context shows that he was writing to a romantic partner and that not allowing the jury to see the entire letter "prevented the jury from understanding that this letter too exuded bravado to impress Courtney and to portray the type of tough guy personality that one would need to survive in prison" and prevented the jury from considering that he also had a loving heart and was trying to maintain a relationship with Courtney.

Appellate courts review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if

4

it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *see Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). In addition, an appellate court reviews the trial court's ruling in light of the record before the court "at the time the ruling was made." *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.).

The rule of optional completeness is found in Rule 107 of the Rules of Evidence, which reads, in relevant part, as follows:

> If a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party may inquire into any other part on the same subject. An adverse party may also introduce any other act, declaration, conversation, writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent.

Tex. R. Evid. 107.

The rule is an exception to the Rules of Evidence prohibiting the admission of hearsay, *Castillo v. State*, 573 S.W.3d 869, 877 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd); *see* Tex. R. Evid. 801-02, "and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter 'opened up' by the adverse party," *Whipple v. State*, 281 S.W.3d 482, 500 (Tex. App.—El Paso 2008, pet. ref'd). However, the rule only allows for the introduction of "those parts of a recorded statement necessary to make the previously admitted evidence fully and fairly understood." *Castillo*, 573 S.W.3d at 879. "The plain language of Rule 107 indicates that in order to be admitted

under the rule, the omitted portion of the statement must be 'on the same subject' and must be 'necessary to make it fully understood.'" *Sauceda v. State*, 129 S.W.3d 116, 123 (Tex. Crim. App. 2004) (quoting Tex. R. Evid. 107). "[E]vidence offered for context must be 'on the same subject' as the portion already admitted." *Gutierrez v. State*, 85 S.W.3d 446, 456 (Tex. App.— Austin 2002, pet. ref'd) (quoting Tex. R. Evid. 107).

The topics for the portion of Jervis's first letter admitted into evidence were his being made into a gangster, being taught to give and get respect, and misbehaving when he gets disrespected, including engaging in shootouts and kicking in doors to engage in criminal activity. The remainder of the letter does not address those topics; on the contrary, the remainder of the letter focuses on his having written emotional letters to several people, thanking the recipient of the letter for all she had done for him, hoping that the recipient will continue their relationship despite the charges and other prior events, proclaiming that he was the recipient's man, being raised as a man, loving nature, and being grateful to the recipient for having helped change him.[1]

---

[1] The first letter reads in its entirety as follows with italicized emphasis added to show the portion that was admitted into evidence:

Courtney,

Hey my love!  The day is winding down finally.  Tomorrow is the day I've been waiting for, for the past 6 months.  I'm sure mom will let you read her letter after she is done crying.  But since I'm sending mail that makes people cry might as well add you to the list (You, mom, & my Granny).  First I want to thank you for everything.  The phone calls, letters, pictures but most importantly I wanted to thank you for your time, the smile you keep on my face, believing in me, accepting me for what I am, the bond we share but the main thing is your love.  I know the situation is a little crazy (a lot crazy) but its making our relationship stronger.  I know Imma lot to deal with most of the time.  People are gonna tell you a lot of shit about me most of it is true.  I know you say you won't care what they say but just know @ the end of the day Imma <u>MAN</u>.  Your man to be specific.  All that stuf people tell you I promise no one will talk shit too my face, because not only did my mom raise a man.  *She made a GANGSTA as well.  She taught me to give respect but to demand it in return!  And I do the fool when I get*

6

Although the remainder of the letter provided context regarding the nature of the relationship between Jervis and the recipient, the admitted portion could be fully understood on its own.

The topics of the portion of Jervis's second letter admitted into evidence were his paranoia, bad temper, and ready access to a firearm or a friend to deal with bad situations that seem to regularly recur.  The remainder of the letter did not discuss those topics; instead, the letter addressed his day, relationship with another woman, role as the recipient's boyfriend, desires and expectations of a girlfriend, place of birth, pet preferences, family members, fashion choices, future family plans, inclination to blame himself, and pet peeves.[2]  As with the other

---

*disrespected!  I'm known for gangbanging, fighting, shootouts, kick doors, being a jack boy, etc.*  But what very few know me as is someone with a huge heart who loves hard because people take advantage of that person.  But all my faith is in us & you!  This is why I want you to know the person I've hid from so many people.  Thank you for helping me find this person.

*I love you*
*-Hunter*

[2] The second letter reads in its entirety as follows with the italicized emphasis added to show the portion that was admitted into evidence:

Courtney,

Sup babe?  Yesterday was a shitty day.  I was in a bad mood all day then I missed our phone call smh.  Idk how my stupid ass got the times mixed up.  I hate not talking to you, its my one escape from my life of chaos.  NOW LET ME CLEAR THIS UP RN!  1st I haven't talked to bri in <u>weeks</u>!  When I did its because her son was wondering where she was.  I call bri's <u>mom</u> everyday and talk too Major (her son) because I'm the only father type figure in his life.  2nd Red is in the <u>4's</u> I'm in the <u>3's</u> how would he no what I was doing?  What he might have been referring too is when I first got locked up I was in his tanks (40) and I had pictures of bri then but that's it!

Guess he wants me too get on your moms bad side or whatever.  Which makes him look really weak.  But whatever Ill apologize for his ignorance.  Thought me and him where better than that.

Look I'm your man its my job too listen to whats troubling you. That's what Im here for. <u>You.</u> I wish I could do more from here my love. I really wish I could. I promise i'll make it up to you in the world.

What I want from my girl.

Trust, respect, love, and a extravagant sex life. Like I'm down for role play, making pornos, literally <u>EVERYTHING</u>. I like going too sex shops picking out a whole bunch of stuff. I got a pornstar mind & pornstar dick (lucky you). My biological siblings consist of Jace (19), Skyler (18), Maddison (12), Caedon (21), Lauran (26), foster siblings Tyler Farr (23), Khalil Riggins (21), Sonny, Paige Schulze (25), Nathan Wallace (26).

I was raised in giddings, Tx got it tattoed all over me lol. But Ive lived my life there as well as many other places. As well as here so Im ready to go somewhere new.

Im a pittbul guy. I have a cat that lives @ misty ryburns house named "Dangus". I really have too feel a immediate bond with an animal for me to like it/tolerate them. Im totally down for exotics. I want a baby panther lol. My style varies. I keep some designer shirts & pants. Jordans. Hats. But I also keep a pair of square toe boots, toned jeans and button down just in case lol. But usually Im in slides, basketball shorts, and a T-Shirt. Im down to explore new music with you. Im always down for a roadtrip to <u>Wherever</u>!

The good: Ima family man. I want a lot of kids. I can cook very well. Love tattoos definitely gonna get a lot more. Im really down for whatever. When my love starts it doesn't end. Im very protective sometimes too protective.

The Bad: *I'm always paranoid . . . because of the all things I've done in my life. I have a bad temper. I usually have a gun in arms reach if not I got a homeboy with me just in case some shit pops off (which it usually does).* There are probably somethings Im forgetting. Youll have to ask my mom. Oh I blame myself for a lot of things, which results in me having a million pounds of pain, stress, blame, & Hate on my shoulders.

Pet Peeves: When people eat my frosted flakes, reading out loud, blue (color), jokes about my head, slurping noises (unless Im getting some head or giving my chick some head), my being touched, saving blunt roaches, people drinking my soda or juice, when people ask if they can have a sip of my drink, when my clothes get messed up or stain there are probably more just can't think of them right now.

**Nov 24**

letter, the omitted portions provided context regarding Jervis's relationship with the recipient, but the admitted portion could be fully understood without the omitted portions.

In light of the preceding, the trial court could have reasonably determined that the remainder of the two letters did not address the same subjects as the admitted portions of the two letters and that admission of the remainder of the letters was not necessary for the jury to fully understand the admitted portions of the two letters. *See id.* (determining that evidence concerning individual's carrying illegal knife was not on same subject as individual's arrest for public intoxication); *Simpson v. State*, 975 S.W.2d 364, 368-69 (Tex. App.—Waco 1998, no pet.) (noting that appellant "complains about the exclusion of testimony regarding two separate events which allegedly occurred during" her relationship but gave "no indication how either" incident might "explain the events surrounding the extraneous offenses already discussed" and concluding that evidence of other person's "bad acts" was not on same subject and could not help explain defendant's "extraneous offenses"); *Reynolds v. State*, 856 S.W.2d 547, 550 (Tex. App.—Houston [1st Dist.] 1993, no pet.) (observing that defense counsel impeached testimony of witness when witness admitted that in prior statement she said that she guessed people were talking and that State then moved to admit entire prior statement from witness, including statement that witness heard that defendant had been fired for inappropriate conduct with children, and concluding that reference to whether witness heard voices "is unrelated to the subject matter of statement" regarding defendant having been fired); *Patel v. State*, 856 S.W.2d 486, 490 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (determining that reference in memorandum regarding how defendant obtained vehicle was not on same subject as

---

Hey baby! Hope you have a day as perfect as you! I just got up. Sonny came in here and woke me up. So I figured Id write a little bit. Let you know your on my mind.

9

earlier reference in memorandum showing that defendant's credit card was rejected when trying to rent motel room); *see also Martinez v. State*, No. 08-14-00242-CR, 2018 WL 2328242, at *3 (Tex. App.—El Paso May 23, 2018, pet. ref'd) (op., not designated for publication) (concluding that admission of entire interview was not warranted under Rule 107 because "[t]he statements given to the detective denying his guilt are not the 'same subject' as [appellant's] willingness to take a polygraph").[3]

---

[3] In his brief, Jervis points to two appellate opinions as support for his arguments that the entire letters should have been admitted, but we do not believe those cases compel a conclusion that the trial court abused its discretion. In *Elmore v. State*, the trial court admitted a letter written by a police chief and delivered to the defendant's wife that was offered by the State in which the police chief encouraged appellant to either remove or reconfigure any gambling devices on the premises but excluded a letter written by the defendant's wife to the chief that was offered by the defendant in which his wife stated that the video games had been reconfigured to conform to the relevant statutory requirements. 116 S.W.3d 809, 814 (Tex. App.—Fort Worth 2003, pet. ref'd). Our sister court of appeals determined that the trial court abused its discretion by excluding the second letter "because it completed the communication between the parties" and that excluding the second "letter gave rise to a strong possibility that the jury could form a false impression regarding Appellant's intent." *Id.* In the current case, no responsive documents were offered to complete the communication between Jervis and the recipient, and as set out above, the remainder of the two letters did not address the same subjects as the portions of the letters admitted into evidence and were not needed to fully understand the admitted portions.

In the next case relied on by Jervis, *Walters v. State*, the trial court admitted recordings of 911 calls made after a shooting but excluded a recording of a "911 conversation" regarding the shooting in which the 911 operator called the defendant back after realizing that the defendant had likely been involved in the shooting, and the Court of Criminal Appeals determined that the trial court abused its discretion by excluding the last recording. 247 S.W.3d 204, 220 (Tex. Crim. App. 2007). In that case, the Court of Criminal Appeals explained that the recording of the last 911 call should have been admitted because the State "opened the door to the admission of the . . . 911 call" by cutting off the answer from one of its witnesses and creating the false impression that the defendant offered no explanation for why he shot his brother when in fact the defendant explained in the final 911 recording that he was acting in self-defense. *Id.* at 215, 220-21. Here, in contrast, the State did not open the door to the other topics in the unadmitted portions of the letters or elicit testimony or redirect questioning in a manner that created a false impression.

For these reasons, we conclude that the trial court did not abuse its discretion by denying Jervis's request to have the entirety of the two letters admitted under the rule of optional completeness, *see* Tex. R. Evid. 107, and therefore overrule his issue on appeal.

## CONCLUSION

Having overruled Jervis's issue on appeal, we affirm the trial court's judgment of conviction.

_____

Thomas J. Baker, Justice

Before Justices Baker, Kelly, Smith

Affirmed

Filed:   August 18, 2023

Do Not Publish