In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00116-CR


______________________________




JOHN SHEFFIELD, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 34805-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 John Sheffield appeals his conviction by the trial court of the offense of stalking. See Tex.
Penal Code Ann. § 42.072 (Vernon 2003). Sheffield was sentenced by the trial court to eight years'
imprisonment.

 On appeal, Sheffield claims that the evidence was legally and factually insufficient to support
his conviction, that he received ineffective assistance of counsel, and that the trial court abused its
discretion by not allowing a defense witness to testify.

I. Facts

 Debra Bayless testified that she and Sheffield had been romantically involved for
approximately a year and that Sheffield became violent toward the end of that relationship, choking
her, shoving her against a wall, and leaving bruises on her. She testified that the escalation of
Sheffield's violence toward her caused her to leave him. She stated that she had to "be in hiding for
the first month or two after we split up," and that every time Sheffield called her, she feared for her
life.

 Bayless testified she worked as a caregiver at her client's residence. On February 13 and
February 21, 2006, Sheffield called Bayless' cell phone and called the residence where she worked
numerous times, threatening to harm her. Bayless turned on the answering machine and recorded
some of Sheffield's calls, including one in which Sheffield stated, "if [Bayless] wanted to play God,
he'll play death and he would find me and be where I'm at." She later took this tape to the police. 
It was introduced into evidence at trial. Sheffield further testified that Bayless came to the residence,
"banged" on the door and, when she refused to open the door, he threatened to break the windows
and come in and kill her. She testified that she called the police because she wanted Sheffield to
know that she was serious about him not coming to the residence where she worked and that she
wanted no further contact with him. She also testified that, during the time of February 13 through
February 21, she took Sheffield's threats seriously and that she was in fear for her life. 

II. Legal Sufficiency

 Sheffield claims in his first point of error that the evidence was legally insufficient to support
his conviction. (1) Sheffield was convicted under Section 42.072 of the Texas Penal Code, which
reads, in pertinent part, as follows:

 § 42.072. Stalking

 (a) A person commits an offense if the person, on more than one occasion
and pursuant to the same scheme or course of conduct that is directed specifically at
another person, knowingly engages in conduct, including following the other person,
that:

 (1) the actor knows or reasonably believes the other person will
regard as threatening:

 (A) bodily injury or death for the other person;

 . . . .

 (2) causes the other person or a member of the other person's
family or household to be placed in fear of bodily injury or death . . .; and

 (3) would cause a reasonable person to fear:

 (A) bodily injury or death for himself or herself.


Tex. Penal Code Ann. § 42.072.

 Bayless testified that Sheffield, on February 13 and 21, 2006, made numerous threatening
telephone calls to her, that he came by the residence where she was working and threatened to break
in and kill her, and that she took his threats seriously and feared for her life. The indictment alleges
that Sheffield engaged in conduct he knew Bayless would regard as threatening bodily injury or
death including "ringing the doorbell of said residence and threatening to kill Debra Bayless."

 Sheffield further contends the evidence is legally insufficient because the State did not prove
he rang the doorbell on February 21, 2006, as alleged in the indictment. The argument is essentially
that the State did not prove that which it had alleged. 

 We measure the sufficiency of the evidence against the elements of the offense as defined
by a hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App.
1997); see also Gollihar v. State, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). Such a charge
includes one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily
increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and
adequately describes the particular offense for which the defendant was tried." Malik, 953 S.W.2d
at 240; Gollihar, 46 S.W.3d at 253. The law as authorized by the indictment means the statutory
elements of the charged offense as modified by the charging instrument. See Curry v. State, 30
S.W.3d 394, 404 (Tex. Crim. App. 2000). This test is applicable in bench trials as well as jury trials. 
Malik, 953 S.W.2d at 240; Harvey v. State, 135 S.W.3d 712, 716 (Tex. App.--Dallas 2003, no pet.). (2)

 The controlling statute is set out above. The precise method used by Sheffield that was
regarded as threatening is not an element of the offense. The threat is an element--the precise
manner in which the threat is accomplished is not. Thus, whether the State proved that Sheffield
hammered on the door or rang a doorbell repeatedly is not an element of the offense, but a manner
or means of committing the offense, and we will not so restrict the theories of liability that might be
proven by the State. The State provided evidence of all that it was required to prove, and the
variance, being nothing more than an allegation of how the offense was committed--and with no
suggestion that it failed to provide notice, or placed Sheffield in risk of being prosecuted again for
the same crime, is immaterial. See Gollihar, 46 S.W.3d at 257, n.23.

 There is legally sufficient evidence on each of the required elements to support the
conviction. We overrule this point of error.

III. Factual Sufficiency

 Sheffield next contends the evidence is factually insufficient to support his conviction. (3) We recognize that, in our review of the evidence, we must defer to the trier of fact and may
not substantially intrude on the fact-finder's role as the sole judge of the weight and credibility of the
witnesses. Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997); Mosley v. State, 141
S.W.3d 816 (Tex. App.--Texarkana 2004, pet. ref'd). We have previously discussed the evidence
introduced at trial. Weighing all the evidence in a neutral light, both in support of and against the
finding, we conclude the trier of fact was rationally justified in finding guilt beyond a reasonable
doubt. The evidence is factually sufficient to support the verdict. We overrule this point of error.

IV. Ineffective Assistance of Counsel

 Sheffield next complains he received ineffective assistance of counsel, stating that counsel
was deficient in not subpoenaing requested witnesses, that trial counsel did not properly explain the
jury waiver to him, that counsel allowed a defense witness to violate the "rule," that counsel did not
object to the introduction of evidence of Sheffield's prior bad acts, that counsel failed to file a motion
to suppress Sheffield's arrest, and that counsel failed to object to the State's closing argument.

 Ineffective assistance of counsel claims are evaluated under the two-part test formulated by
the United States Supreme Court in Strickland v. Washington, requiring a showing of both deficient
performance and prejudice. 466 U.S. 668, 689 (1984). A Strickland claim must be "firmly founded
in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim. 
Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); Thompson v. State, 9 S.W.3d
808, 813 (Tex. Crim. App. 1999).

 Direct appeal is usually an inadequate vehicle for raising such a claim because the record is
generally undeveloped for the object of litigating or preserving the claim and thus often incomplete
or inadequate for this purpose. See Goodspeed, 187 S.W.3d at 392; Freeman v. State, 125 S.W.3d
505, 506 (Tex. Crim. App. 2003); Fuller v. State, 224 S.W.3d 823, 828-29 (Tex. App.--Texarkana
2007, no pet.). This is true with regard to the question of deficient performance--in which counsel's
conduct is reviewed with great deference, without the distorting effects of hindsight--where
counsel's reasons for failing to do something do not appear in the record. Thompson, 9 S.W.3d at
813. The Texas Court of Criminal Appeals has said that "trial counsel should ordinarily be afforded
an opportunity to explain his actions" before a court finds that he or she rendered ineffective
assistance. See Goodspeed, 187 S.W.3d at 392 n.14 (quoting Rylander v. State, 101 S.W.3d 107,
111 (Tex. Crim. App. 2003)); Fox v. State, 175 S.W.3d 475, 485 (Tex. App.--Texarkana 2005, pet.
ref'd). We indulge a strong presumption that counsel's conduct falls within the wide range of
reasonable, professional assistance, and motivated by sound trial strategy. See Jackson v. State, 877
S.W.2d 768, 771 (Tex. Crim. App. 1994). The defendant must rebut the presumption that the
challenged conduct can be considered sound strategy. Id. If the record is silent as to an attorney's
particular course of action, we are compelled to find that the defendant did not rebut the
presumption. Thompson, 9 S.W.3d at 814. Here, the trial attorney did not testify at the hearing on
the motion for new trial. 

 A. Failure to Obtain Witnesses

 Sheffield's first claim of ineffective assistance of counsel arises from the fact that he claims
defense counsel did not obtain two witnesses crucial to his defense. Before trial began, defense
counsel stated on the record that Sheffield had requested him to subpoena two witnesses: (1) a
Mr. Roberts, who lived in a trailer park and who the Gregg County Sheriff's Department had
attempted to serve, but had found the trailer empty; and (2) an Officer Easterland, whose testimony
would have been about a different matter and on a different date than the incident for which trial was
being held. During a pretrial discussion, counsel stated that he had instead subpoenaed another
officer and felt that officer's testimony regarding this separate incident was sufficient. Counsel has
stated his reasons on the record for his strategy in this regard. Sheffield has failed to overcome the
presumption that such action was sound trial strategy. No ineffective assistance of counsel is
shown.

 B. Failure to Adequately Explain the Jury Waiver

 During the hearing on the motion for new trial, Sheffield stated that counsel had told him that
he was "facing 25 to life," but he had read in the newspaper the punishment range was two to ten
years. This was explained when evidence was presented that Sheffield had previously been
convicted for two felonies and, if these enhancement allegations were invoked by the State, the range
of punishment would be twenty-five years to life imprisonment. (4) There is no evidence that Sheffield
was unaware of the proper range of punishment at the time he waived the jury trial. Sheffield was
questioned by the trial court, after the court made sure he was mentally competent, as follows:

 THE COURT: Now, you have the right to be tried by a jury. You signed a
paper saying you don't want a jury, you want me as the judge of this court to hear the
case and decide of [sic] your guilt or innocence . . . .


 . . . .


 THE COURT: You don't want to have a jury do that?


 [SHEFFIELD]: No, sir.


The court went on to ask Sheffield if he understood what he was doing by waiving a jury trial. 
Sheffield answered affirmatively. Further, Sheffield does not claim that a different trial strategy
would have produced a different result. No ineffective assistance of counsel is shown.

 Further, we recognize that a strategic reason for waiving a jury trial was a request for
community supervision punishment. Under the law, in view of Sheffield's criminal history, a jury
could not have assessed community supervision; a jury cannot assess community supervision unless
the defendant files a sworn motion that he or she has never before been convicted of a felony offense
and the jury finds that such information in the motion is true. Tex. Code Crim. Proc. Ann.
art. 42.12, § 4(e) (Vernon Supp. 2007). Sheffield filed a motion for community supervision with the
trial court, argued for such sentence, and it was considered and rejected by the trial court. No
ineffective assistance of counsel has been shown. 

 C. Allowing Defense Witness to Violate the "Rule"

 Sheffield invoked the "rule," requiring that witnesses be excluded from the courtroom except
during their testimony. See Tex. R. Evid. 614. Sheffield's sister, Barbara London (also known as
Barbara Sanders), unbeknownst to counsel, entered the courtroom at some time during the trial. 
Counsel stated that he had talked to London on the telephone, but had never met her, and therefore
he did not recognize her or realize she was in the courtroom during the trial. The record also shows
that Sheffield did not mention to his counsel that his sister was in the courtroom. We adopt the
reasoning of the Austin Court of Appeals in Casey v. State, No. 03-03-00030-CR, 2007 Tex. App.
LEXIS 7940 (Tex. App.--Austin Oct. 5, 2007, no pet.) (mem. op., not designated for publication),
where the court found no ineffective assistance of counsel when a witness listened to a portion of
the trial and was disqualified from testifying. The Austin court held that, since there was no
evidence that trial counsel told the witness that she could listen to the trial or that counsel knew that
she had entered the courtroom, ineffective assistance of counsel was not shown. Id.

 No ineffective assistance of counsel is shown. 

 D. Failure to Object to Evidence of Prior Bad Acts

 Sheffield next complains that trial counsel was ineffective for failing to object to "allegations
of prior physical abuse." This allegation does not specify the instances of this evidence in the record. 
We note that Bayless testified that, before she and Sheffield ended their relationship, he tried to
choke her and shoved her, causing bruises. "And that's why I feared for my life every time he called
me." Sheffield has not adequately briefed this issue; no authority was cited, and the State has not
responded. From this limited record and argument, this testimony appears to be admissible to show
an element of the offense: that, due to Sheffield's past behavior, Bayless was in fact in fear for her
life and of serious bodily injury. The State was required to prove Bayless was placed in fear of
bodily injury or death at the time of Sheffield's conduct. See Tex. Penal Code Ann. § 42.072;
Clements v. State, 19 S.W.3d 442, 448 (Tex. App.--Houston [1st Dist.] 2000, no pet.); Allen v.
State, 218 S.W.3d 905 (Tex. App.--Beaumont 2007, no pet.). Even if this evidence had been
objected to and excluded, we do not believe this explanation of the background of the parties'
relationship caused a different result.

 E. Failure to File Motion to Suppress

 Sheffield also contends his trial counsel was ineffective for failing to file a motion to
suppress his arrest based on the fact that he was arrested without a warrant and had not committed
any offense in the presence of the arresting officer. Sheffield was arrested by Officer Mark Faulkner
of the Longview Police Department. Faulkner testified he arrested Sheffield on a "be-on-the-look-out" call for a certain vehicle regarding a terroristic threat (which charge was later changed to
stalking). The call went out at 10:00 p.m., and Faulkner testified he located the vehicle and arrested
Sheffield at 10:18 p.m. 

 In order for a warrantless arrest to be justified, the State must show the existence of probable
cause at the time the arrest was made and the existence of circumstances which made the procuring
of the warrant impracticable. Crane v. State, 786 S.W.2d 338, 346 (Tex. Crim. App. 1990). The
test of probable cause for a warrantless arrest is whether the facts and circumstances within the
officer's knowledge and of which he or she had "reasonably trustworthy information were sufficient
to warrant a prudent person in believing that the arrested person had committed or was committing
an offense." Garrison v. State, 726 S.W.2d 134, 137 (Tex. Crim. App. 1987) (quoting Beck v. Ohio,
379 U.S. 89 (1964)). 

 In this case, Sheffield was arrested eighteen minutes after the call went out. (5) He had, just
shortly before, been threatening to harm Bayless, who had called police regarding his behavior. 
There was adequate reason for the officer to believe that Sheffield had committed an offense. 
Counsel was not ineffective for failing to file a motion to suppress the arrest.

 F. Failure to Object to State's Closing Argument

 Sheffield further complains that his counsel was ineffective for failing to object to the State's
remark during closing argument that Bayless' "undisputed testimony" was a comment on the fact that
Sheffield did not testify at trial. 

 To violate an appellant's constitutional and statutory rights, the objectionable comment,
viewed from the perspective of the fact-finder, must be manifestly intended to be or of such a
character that the fact-finder would necessarily and naturally take it as a comment on the accused's
failure to testify. Fuentes v. State, 991 S.W.2d 267, 275 (Tex. Crim. App. 1999); Banks v. State, 643
S.W.2d 129, 134-35 (Tex. Crim. App. 1982). An indirect or implied allusion to the accused's failure
to testify does not violate a defendant's right to remain silent. Fuentes, 991 S.W.2d at 275; Banks,
643 S.W.2d 135. Calling attention to the absence of evidence which only the defendant could
produce will result in reversal only if the remark can only be construed to refer to appellant's failure
to testify and not the defense's failure to produce evidence. Fuentes, 991 S.W.2d at 275; Banks, 643
S.W.2d at 134.

 This trial was nonjury. The reason that a comment on the defendant's failure to testify may
present error is that it violates his or her constitutional right to remain silent as guaranteed by the
Fifth Amendment to the United States Constitution. Griffin v. California, 380 U.S. 609, 613 (1965);
see U.S. Const. amend. V. When this occurs, the usual procedure is for the defense attorney to
object and request the trial court to instruct the jury to disregard the comment and move for a
mistrial. Most comments may be cured by court instruction. See Moore v. State, 999 S.W.2d 385,
405 (Tex. Crim. App. 1999). The complaint here is that the attorney failed to object to the comment. 
But if he had objected, what would the objection be? There was no jury to instruct. The trial court
was well aware that no inference could be drawn from the defendant's failure to testify, as it had just
instructed Sheffield that he had the right "not to testify and I will not hold against you your failure
to testify . . . ." It is certainly understandable that the defense counsel felt the remark by the State
was innocuous, particularly since this was a bench trial and therefore an objection was not in his
client's best interest. We do not find the failure to object in this context was deficient professional
performance by the trial attorney. 

V. The Trial Court Did Not Abuse Its Discretion in Excluding Testimony of Witness

 Sheffield contends in his last point of error that the trial court abused its discretion by failing
to allow defense witness London to testify. As stated earlier in this opinion, London had entered the
courtroom, unbeknownst to trial counsel, after Rule 614 of the Texas Rules of Evidence had been
invoked. The trial court denied Sheffield's request to allow London to testify despite her having
heard at least portions of the testimony of other witnesses during the trial.

 It is the trial court's decision whether to allow a witness to testify after that witness has
violated Rule 614, and that decision is reviewed under an abuse of discretion standard. Kelley v.
State, 817 S.W.2d 168, 171-72 (Tex. App.--Austin 1991, pet. ref'd); see Toney v. State, 3 S.W.3d
199, 208 (Tex. App.--Houston [14th Dist.] 1999, pet. ref'd).

 A record was made of the content of London's testimony, had she been allowed to testify. 
Counsel stated that London was to have testified regarding the fact that there was an ongoing
conspiracy by Bayless to "get" Sheffield, that she continually harassed him, and that it was a game
on her behalf to get control of the property and the mobile home in which they lived. 

 Officer Mike Claxton had testified for the defense and stated that he had investigated a
burglary of Sheffield's habitation March 9, 2006. Sheffield had reported that his residence had been
burglarized and that specific items had been stolen. During Claxton's investigation regarding this
burglary, Claxton had interviewed Bayless, who admitted going into the house and taking most of
the property that had been reported stolen. Based on Claxton's investigation, he testified that Bayless
had a right to enter the property and take the items she had taken, those items being her personal
property. 

 Based on the testimony the trial court had heard and based on the content of London's
testimony had she been allowed to testify, Sheffield did not meet his burden of proof to show that
London's testimony was "essential" to his defense regarding the offense of stalking, and the trial
court did not abuse its discretion by not allowing London to testify. See Toney, 3 S.W.3d at 208;
Kelley, 817 S.W.2d at 171-72; see also Webb v. State, 766 S.W.2d 236, 243-44 (Tex. Crim. App.
1989).

VI. Judgment

 We do note, however, that the trial court's judgment in this case indicates Sheffield pled
"guilty" to the offense of stalking. Our review of the record shows that Sheffield pled "not guilty"
to the offense. We recognize that the trial judge stated at the hearing on motion for new trial that the
judgment was incorrect and that he was entering a judgment nunc pro tunc stating that Sheffield pled
not guilty. However, our record does not reflect that this occurred. 

 This Court has the authority to reform the judgment to make the record speak the truth when
the matter has been called to our attention by any source. French v. State, 830 S.W.2d 607 (Tex.
Crim. App. 1992). In Asberry v. State, 813 S.W.2d 526 (Tex. App.--Dallas 1991, pet. ref'd), the
court noted that the authority of the appellate court to reform incorrect judgments is not dependent
on request of any party; the appellate court may act sua sponte. The Texas Rules of Appellate
Procedure provide direct authority for this Court to modify the judgment of the trial court. Tex. R.
App. P. 43.2.

 Therefore, we hereby reform the judgment to indicate a plea of "not guilty" to the offense
of stalking. 

 As reformed, we affirm the judgment of the trial court.



 Jack Carter

 Justice


Date Submitted: February 14, 2008

Date Decided: May 21, 2008

 

Do Not Publish


1. We review the legal sufficiency of the evidence considering all the evidence in the light most
favorable to the verdict, could a rational jury have found the essential elements of the crime beyond
a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Hooper v. State, 214 S.W.3d
9, 13 (Tex. Crim. App. 2007).
2. See Stafford v. State, 248 S.W.3d 400 (Tex. App.--Beaumont 2008, no pet. h.) (discussing
due process, evidentiary sufficiency, and the relationship of a variance between allegation and proof).
3. When reviewing the evidence for factual sufficiency, we review all the evidence admitted
at trial in a neutral light. The evidence supporting the verdict may be factually insufficient if the
evidence supporting that verdict is so weak that the judgment of the trier of fact appears clearly
wrong or manifestly unjust or if the evidence supporting the judgment of conviction is outweighed
by the great weight and preponderance of the evidence. Roberts v. State, 220 S.W.3d 521, 524 (Tex.
Crim. App. 2007); McDowell v. State, 235 S.W.3d 294, 296 (Tex. App.--Texarkana 2007, no pet.). 
This factual sufficiency standard requires that we reach "a high level of skepticism" before we may
reverse a verdict based on factual insufficiency. Roberts, 220 S.W.3d at 524.
4. See Tex. Penal Code Ann. § 12.42(d) (Vernon Supp. 2007).
5. An officer may rely on information relayed to him or her by other officers and the sum of
information known to those cooperating with the officer. State v. Jennings, 958 S.W.2d 930, 933
(Tex. App.--Amarillo 1997, no pet.). Even when an officer is briefed on the contents of a radio
dispatch, but did not personally hear the dispatch, that is also sufficient to provide probable cause
to justify an arrest. Busby v. State, 990 S.W.2d 263, 269 (Tex. Crim. App. 1999).


yle='mso-tab-count:
1'>                                 DENNIS WAYNE ROGERS,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 241st
Judicial District Court

                                                             Smith County, Texas

                                                       Trial Court
No. 241-2042-09

 

                                                    
                                              

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                      MEMORANDUM OPINION

 

            In
Smith County,[1]
Texas, in July 2009, Heather,[2]
a child, made an outcry that Dennis Wayne Rogers had been sexually abusing
her.  At the time of the alleged abuse,
Rogers was acting as Heathers stepparent. 
After an investigation, Rogers was indicted for continuous sexual abuse
of a child.  Rogers pled not
guilty.  After a jury trial, he was
convicted and sentenced to ninety-nine years imprisonment.

            On
appeal, Rogers contends that:  (1) the
State failed to disclose exculpatory and mitigating evidence; (2) the trial
court erred in permitting the State to bolster the victims testimony; and (3)
the trial court erred in denying Rogers a requested hearing on his motion for
new trial.

            We
affirm the judgment of the trial court because:  (1) Rogers waived any potential Brady[3] violation; (2) Rogers failed to
preserve the issue of bolstering; and (3) denying Rogers an evidentiary hearing
on his motion for new trial was not an abuse of discretion.

Rogers waived any potential Brady violation

            During
the testimony of the forensic interviewer, Becky Cunio,
it was revealed that Heather had asked her sibling, Karen, another child in
Rogers home, if she had ever been abused, but Karen said no.  The investigation report on Heather notes
that she was unsure of the veracity of Karens denial.  Based upon these implications, Child
Protective Services (CPS) had previously conducted a video-recorded risk
assessment interview of Karen and determined that no abuse had occurred.  

            The
State had not previously disclosed Karens video-recorded interview to Rogers.[4]  After a recess, copies of the video recording
and related documentation were provided to Rogers, and he argued that Karens
denial of abuse was exculpatory and that the new information revealed several
potential witnesses that were previously unknown.  

            In
his first point of error on appeal, Rogers contends that the State improperly
failed to disclose exculpatory and mitigating evidence.

            The
State has an affirmative duty under the Due Process Clause to disclose
exculpatory or impeachment evidence that is material to guilt or
punishment.  See generally United States v. Bagley, 473 U.S. 667, 676 (1985); see also Brady, 373 U.S. at 87; Thomas v. State, 841 S.W.2d 399, 407
(Tex. Crim. App. 1992).  Favorable
evidence is material if there is a reasonable probability (i.e., a
probability sufficient to undermine confidence in the outcome) that had the
evidence been disclosed to the defense, the result of the proceeding would have
been different.  Thomas, 841 S.W.2d at 404.  When the evidence is disclosed during trial,
however, the materiality question turns on whether the defendant was prejudiced
by the delayed disclosure.  Williams v. State, 995 S.W.2d 754,
76162 (Tex. App.San Antonio 1999, no pet.).  Furthermore, when previously withheld evidence
is disclosed at trial, the defendant has an opportunity to request a
continuance.  Id. at 762.  The failure to
request a continuance waives any Brady
violation.  Gutierrez v. State, 85 S.W.3d 446, 452 (Tex. App.Austin 2002,
pet. refd); Williams,
995 S.W.2d at 762.

            After
a copy of the video recording and documentation were provided to Rogers, he
argued that Karens denial of abuse was exculpatory and that the information
divulged the names of several potential witnesses.  Due to this development, the court recessed
for the day at around 3:00 p.m., giving Rogers until 8:30 in the morning to
review all this.  The next morning,
Rogers trial counsel reiterated his objection and made an oral motion, and the
following exchange took place:

            THE
COURT:  . . . . Im trying to see if I
understand this motion.  Youre making a
motion for additional time.  Is that one
of the motions? 

 

            [Counsel
for Rogers]:  No.  Im asking for a mistrial, Your Honor.

 

            THE
COURT:  Okay.  Thats what --

 

            [Counsel
for Rogers]:  Im asking for the appointment
of a special investigator to help find Mr. Mills (sic) and other people.

 

            THE
COURT:  All right.  That motion is denied. 

 

            .
. . . 

 

            THE COURT:  Subject
to me overruling -- having overruled your motion for a mistrial, are you ready
for the jury? 

 

            [Counsel for Rogers]: 
Were ready. 

 

            Here,
Rogers clearly stated that he was moving for a mistrial, not a
continuance.  Therefore, assuming arguendo that
the State failed to disclose exculpatory or mitigating evidence in violation of
Brady, Rogers waived any potential
violation by failing to request a continuance. 
See State v. Fury, 186 S.W.3d
67, 7374 (Tex. App.Houston [1st Dist.] 2005, pet. refd)
(holding defendants failure to request continuance indicates tardy disclosure
of withheld evidence not prejudicial for purposes of claim of Brady violation).  We overrule this point of error.

Rogers failed to preserve the issue of credibility testimony

            In
his second point of error, Rogers argues that the trial court erred by allowing
Patricia Nicola and Nanette Parras (the Sexual
Assault Nurse Examiner (SANE)), to testify about the credibility of Heathers
allegations.[5]  

            The
determination of admissibility of evidence is within the sound discretion of
the trial court.  Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op.
on rehg); see
also Apolinar v. State, 155 S.W.3d 184, 186 (Tex.
Crim. App. 2005).  A trial court abuses
its discretion when its determination is outside the zone of reasonable
disagreement.  Howell v. State, 175 S.W.3d 786, 790 (Tex. Crim. App. 2005).

            It
is generally improper for a witness to offer a direct opinion as to the
truthfulness of another witness and such opinion is therefore inadmissible
evidence.  Blackwell v. State, 193 S.W.3d 1, 21 (Tex. App.Houston [1st Dist.]
2006, pet. refd) (citing Schutz v. State, 957 S.W.2d 52, 59 (Tex.
Crim. App. 1997)).  A direct opinion on
the truthfulness of the child is inadmissible. 
Yount v. State, 872 S.W.2d 706, 708 (Tex.
Crim. App. 1993); Sessums v. State, 129 S.W.3d 242, 247 (Tex.
App.Texarkana 2004, pet. refd).  Although an expert may testify to behaviors
and traits that might constitute indicia of manipulation, Schutz, 957 S.W.2d at 59, or that
a child exhibits behavioral characteristics that have been empirically shown to
be common among children who have been abused, Perez v. State, 113 S.W.3d 819, 832 (Tex. App.Austin 2003, pet. refd), a direct comment on a complainants truthfulness
is absolutely inadmissible. Sessums, 129 S.W.3d at 247.  This rule applies to expert and to lay witness
testimony.  Fisher v. State, 121 S.W.3d 38, 4142 (Tex. App.San Antonio 2003,
pet. refd).  This
type of testimony is inadmissible because it does more than assist the trier of fact to understand the evidence or to determine a
fact in issue; it decides an issue for the jury.  Yount, 872 S.W.2d at 709.

            After
Nicola recounted for the jury her recollection of what Heather told her about
the alleged abuse, the State asked whether Nicola believed Heathers accusations
against Rogers.  Rogers objected on the
grounds that [t]hats not a question she can answer, [t]hats not a proper
question, and [w]hat she believes is way outside the record, and her opinion
is not based upon anything and should not be allowed in here . . . .  The trial court overruled Rogers
objections.  The first two objections did
not provide the trial court with a reason that it was not a question she could
answer or why counsel believed that it was not a proper question to ask; the
third rationale seems to center on speculation on the part of the witness.  The objection did not center on the question
of whether the witness could testify as to her personal opinion as to the
veracity of the complainant. 

            Similarly,
after qualifying and establishing Parras as an expert
witness, she testified that she performed the sexual assault examination of
Heather and listened to the childs account of what brought [her] into the
ER.  Rogers contends that the following
portion of Parras testimony on direct examination
was inadmissible opinion testimony:

            Q         [State] 
Based on your training and experience, does [Heathers demeanor and
behavior] give you any concern about the history that she told you?

 

            A         [Parras]  Yes, sir.

 

                        [Counsel
for Rogers]:  Objection, Your Honor.  Shes not qualified to answer that.  Shes a nurse; shes not a psychologist or
anything. 

 

                        THE COURT:  The Courts going to overrule the objection
and find that she is qualified to give that answer.  And she may answer the questions.

 

            Q         [State]  And Ill restate it.  

                        Based
on her a [sic] affect, the fact that she was very quiet, she didnt want to
talk, she was soft-spoken, she looked down, when you were getting that history,
did it give you any concern about what she was telling you?

 

            A         [Parras]  Yes, sir.

 

            Q         And what was that concern?

 

            A         You could tell something had happened
to this child.  She was reluctant to
relay what had happened to her.

 

            Q         And when you say something, maam,
what do you mean by that?

 

            A         I believe that she was sexually
assaulted.

 

                        [Counsel
for Rogers]:  Your Honor, Im going to
object again. Shes not qualified to -- what she believes -- I mean, shes here
as an expert witness on what she examined. 

 

                        THE COURT:  Based on her answers to the questions asked by
the prosecutor that shes given, Im going to overrule the objection . . . .

            

            The
objection raised here is murky.  When
Rogers counsel uttered what she believes, it makes one wonder if he was
intending to lodge an objection to Parras qualifications
to render an experts opinion or whether the nature of the objection was that
she was rendering an opinion of her belief in the truthfulness of the child
(i.e., the credibility of the complainant).  Given the objection as voiced, the trial court
would be reduced to speculation as to its nature and its basis.   In order to preserve a complaint or objection
for appellate review, the record must reflect that it was brought to the
attention of a trial court in accord with applicable rules by a timely request,
objection, or motion which specifically sets out the nature of the complaint in
a sufficiently comprehensible manner that it informs the trial court of its
nature and basis and obtained either an adverse ruling or a refusal to rule.  Tex. R.
App. P. 33.1(a).  Accordingly, we
overrule this point of error. 

Denying Rogers an evidentiary hearing on his
motion for new trial was not an abuse of discretion

            In
his final point of error, Rogers argues that the trial court erroneously denied[6]
him an evidentiary hearing on his motion for new trial.  He contends that the motion alleged facts
outside the record that if true, entitled him to relief.

            We
review a trial courts denial of a hearing on a motion for new trial under an
abuse of discretion standard, in which we reverse only if the decision was so
clearly wrong as to lie outside the zone within which reasonable persons might
disagree.  Gonzales v. State, 304 S.W.3d 838, 842 (Tex. Crim. App. 2010); Smith v. State, 286 S.W.3d 333, 339
(Tex. Crim. App. 2009).  Absent such an
abuse of discretion, an appellate court is not justified in reversing the trial
courts judgment.  Gonzales, 304 S.W.3d at 842; Smith,
286 S.W.3d at 339.

            Yet,
a hearing on a motion for new trial is mandatory if the motion raises reasonable
issues that cannot be determined from the record.  Martinez
v. State, 74 S.W.3d 19, 21 (Tex. Crim. App. 2002); Reyes v. State, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993); Thomas v. State, 286 S.W.3d 109, 115
(Tex. App.Houston [14th Dist.] 2009, no pet.) (hearing required on motion for
new trial asserting that trial counsel was ineffective in not advising him
regarding whether to agree to a mistrial in his first trial and for not calling
as a witness a family member who he claims was the only eyewitness, which
allowed the prosecutor to argue that appellant had no family members who would
support him at trial) (citing Stogiera v. State, 191 S.W.3d 194, 200 (Tex. App.San Antonio
2005, no pet.)).  Such a review

is limited to the trial judges determination of
whether the defendant has raised grounds that are both undeterminable from the
record and reasonable, meaning they could entitle the defendant to relief.  This is because the trial judges discretion
extends only to deciding whether these two requirements are satisfied.  If the trial judge finds that the defendant
has met the criteria, he has no discretion to withhold a hearing.  In fact, under such circumstances the trial
judge abuses his discretion in failing to hold a hearing.

 

Smith, 286 S.W.3d at 340.

            In
support of his motion for new trial and request for a hearing, Rogers relies on
an affidavit from one of the jurors who sat in his case.  The affidavit stated that during the trial,
it became evident to the juror/affiant that Rogers was in custody, a fact
likely evident to other jurors as well. 
The affidavit went on to assert that another juror had told him that
her mind had been made up from the first time that she saw Mr. Rogers.  Rogers argument that the content of the
affidavit is confounded by Rule 606(b) of the Texas Rules of Evidence, which
states:

Inquiry Into
Validity of Verdict or Indictment.  Upon
an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during
the jurys deliberations, or to the
effect of anything on any jurors mind or emotions or mental processes, as influencing any jurors assent to or
dissent from the verdict or indictment.  Nor may a jurors affidavit or any statement
by a juror concerning any matter about which the juror would be precluded from
testifying be admitted in evidence for any of these purposes.  However, a juror may testify:  (1) whether any outside influence was
improperly brought to bear upon any juror; or (2) to rebut a claim that the
juror was not qualified to serve.

 

Tex.
R. Evid. 606 (emphasis added).  Although the affidavit upon which Rogers
bases his motion for new trial raises issues clearly outside the record, it is
clearly reliant on the fact that the juror had become aware that Rogers was in
custody[7]
and on the assertion that another juror had told the affiant that her decision
was based upon Rogers appearance.  In
both instances, such evidence patently attempts to explore the impact of
certain things on jurors minds, emotions, or mental processes which influenced
those jurors in arriving at the jurys verdict. 
As such, it is not competent evidence, specifically barred by Rule 606.  Since this was the sole evidentiary basis for
Rogers motion for new trial, the trial court was within its discretion to deny
an evidentiary hearing on that motion.  Accordingly,
we overrule this point of error.

            We affirm the judgment.  

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          June 23, 2011

Date Decided:             August 18, 2011

 

Do Not
Publish 

 











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization efforts.  See Tex. Govt Code Ann.
§ 73.001 (West 2005).  We are unaware of
any conflict between precedent of the Twelfth Court of Appeals and that of this
Court on any relevant issue.  See Tex.
R. App. P. 41.3.

 





[2]The
two childrens names in this opinion have been replaced with the pseudonyms
Heather and Karen, respectively.

 





[3]Brady v. Maryland, 373 U.S. 83 (1963).





[4]It
is disputed whether Rogers had prior notice that such an interview and
assessment of Karen had occurred. 





[5]On
appeal, this objection is labeled as bolstering, though it is properly cited
and argued as testimony regarding witness credibility.  





[6]The
motion was overruled by operation of law. 
See Tex. R. App. P. 21.8(a), (c).





[7]One
must infer that Rogers believes that the knowledge by jurors that Rogers was in
custody had some fatally deleterious impact on the jurors ability to
impartially determine his guilt.